Tompkins, J.,
delivered the opinion of. the Court.
This is an action of detinue, commenced.in the- Circuit Court of St. Charles county, by Walton, against James and Daniel Baldridge,-for certain slaves. The defend<ants pleaded the general issue, and obtained a verdict- in that Court. A new-'trial was granted, and the cause transferred to ¡the Circuit Court of St. Louis county, where the plaintiff obtained a verdict. A new trial-was again granted, .and"the plaintiff had judgment for one of the slaves. . To reverse this judgment, the defend*ants, James and Daniel Baldridge, come into this Court, and assign for error,
First. Thctthe-.sald Circuit Court received in evidence, and permitted-to be-read to the _jury-,.apaper, purportiog-to be a deed of -trust from Robert. Baldridge to.Jo<— *370 seph Evans, to secure the payment of a sum of money to William Adams, and two assignments thereof, without any proof of the execution of the said instrument.
Second. That the Court refused, on the prayer of the defendants, to instruct the jury that they must find for the defendants, because Joseph Evans, the trustee, had not, in selling the slaves, pursued the power given him in the deed of trust.
Third. That the Court refused to instruct the jury to disregard all parol evidence of the sale of the slaves made by the trustee, because it appeared that the said Walton, at the time he made a demand of the slaves in question, had exhibited a bill of sale as the foundation of his claim, which was not produced at the trial.
Fourth. That the Court refused to sum up. the evidence, and pronounce the law thereon.
Fifth. That the Court refused to set aside the verdict and grant a new trial, for reasons appearing on the record.
From the bill of exceptions it appears, that Robert Baldridge, the intestate, by deed, dated 3d Feb. 1817, convoyed to Joseph Evans, for the purpose of securing the payment of $500 to William Adams, certain negro slaves in that deed mentioned. By this deed it was provided^ that if the said sum-should be paid to Adams, the deed should be void;. but should the money not be paid when due, then Evans, the trustee, was authorized to sell the property at the house of Nathaniel Simond’s in St. Charles, first giving one month’s notice of the day of sale in some newspaper nearest the county of St. Charles, or to Robert Baldridge in writing, or leaving it at his place of residence. It appeared, in evidence, that this deed had, on the two former trials, been read in evidence, by consent of the defendant’s counsel, without proof of its execution. It also, by the endorsements thereon, appeared that the deed had been assigned by Adams to Robbins, and by Robbins to John Baldridge, and that the trustee had advertised the said slaves for sale on the 19th October, 1823, at the place required, and that the sale was postponed till the 31st day of the said month. It was also proved, that the defendants on the 19th October, (the trustee being absent,) consulted in conversation with John Baldridge to defer the sale till the 31st October. It was then proved that Evans, the trustee, on the 31st October aforesaid, sold the negroes at the place before mentioned, notice being given in the same newspaper of the time and place. Walton, the plaintiff, in the Circuit Court,.did not bid for the negroes. It appears that John Baldridge purchased them as- agent for him, and Walton paid the price of the negroes to John Baldridge. Further, to support his claim, the plaintiff offered to read to the jjiry. a bill of sale from Evans to him for said negroes, dated 31st October, 1823, in which it is recited that by virtue of a deed dated 1st May, 1817, of trust from .Robert Baldridge to him, Evans, for the purpose of securing to William Adams the sum of $500, due to him from Robert Baldridge, he had-sold said negroes to said-Walton- The bill of sale was, on motion of the defendants, excluded from the jury,, because it appeared-to be made by virtue of some other deed !of trust than that before mentioned, and read to the jury. It does not appear that Walton attempted to derive title to the negroes by any other sale than that mentioned above.-. It also appears that the defendants requested the Court to instruct the jury to disregard all parol evidence of the sale made by the trustee, because Walton claimed by virtue of. a bill of sale.
On the.first assignment of errors,.it was contended, that the deed of trust ought to llave been read without proof of execution, because notices once proved in Court were read afterwards on all trials that might be had. in. .the same case, and this deed *371 was to be considered as proved; that it was produced by the defendants on notice of the plaintiffs. This last assertion, however true in fact, is not supported by any thing that appears on the face of the bill of exceptions, and, therefore, it is quite immaterial whether it be correct or incorrect. It is true that the permission of the defendants to read the deed on the two first trials, was equivalent to the proof thereof by the subscribing witness; but had that deed been proved on those two trials by the subscribing witnesses, it can hardly be imagined that it would seriously be contended that the proof before the Court could be allowed by the Court to be repeated over to the Court by any bye-stander who might hare recollected it, or by any otherperson than the witnesses in person. How, then, could the consent of the defendants to have that deed read on the two former trials be proved before the third jury? But it was contended that the plaintiff was surprised by the refusal to permit the deed to be read, as on the two former trials. If this were the case, and it had been made to appear to the Circuit Court, a very ready legal remedy could have been applied. It is the opinion of the Court, then, that the first assignment of errors is correct. It is ihe opinion of the Court that the second assignment of errors is good. -The trustee was bound to pursue his power strictly. He did not advertise the property thirty days before the day of sale, and this omission is not cured by the consent of the present defendants to have it sold on the 31st October, without deciding whether they, in .character of administrators, could alter the powers of the trustee, or dispense with any condition of the sale in the same manner the intestate, in his life time, could have done, We are of opinion, that had the intestate, in his life time, in like manner, consented to dispense with the notice of sale, required by the deed of trust, it would have availed Walton nothing in an action between him, Walton, and Robert Baldridge, the intestate, for the same cause. The power was given to the trustee by deed, and if any change were made in it, it should be done by a writing of equal solemnity with the deed giving the powers in the first instance. And here it may he remarked, too, that the trustee did not attend on the 19th of October, and adjourn the sale; and purchasers might have failed to attend for want of his assent to .the day; so that there was no notice of the sale. Of the third assignment, it is not necessary to say much. It is certainly true, that when the bill of sale was decided by the Court to be void, that same sale could not be supported by .verbal evidence of a sale, but had there really been two sales, the one by writing, the other verbally, evidence certainly might properly have been given to the jury of the verbal sale, after the plaintiff had failed to establish the first sale, which he attempted to prove by a written instrument. The language of the bill of exceptions is not so clear and explicit as it might have been. It is not made to appear, whether the bill of sale from the trustee to Walton is under seal or not. And it may be remarked, that written evidence may be proved ; for the language of the books is, that contracts are by specialty and by parol, and that writings not' under seal are all parol. Of the fourth and fifth assignments, the Court thinks it unnecessary to say any thing.
The judgment of the Circuit Court is reversed, and the cause remanded to that Court.