Allen, J.
 

 As this case was heard upon demurrer, the well-pleaded ‘facts must be taken to be true. These facts as alleged show that John Webb, Jr., the testator who executed the will under which the trust involved in this action was created, died upon August 22, 1904; that his widow, Mary Webb, died in 1914; that his son John B. Webb, one of the five beneficiaries under the trust, died upon October 29, 1923; that John B. Webb left a will which was duly probated, making his wife, Elizabeth Voight Webb, the defendant in error herein, his sole legatee and devisee; that under the will of John Webb,'Jr., a large amount of real estate and personal property remains undisposed of by the trustee, and that the trustee, who is also a devisee and beneficiary, has been controlling and collecting the rents and profits of the estate for approximately twenty-two years, and has been dividing these rents and profits among herself and the four other residuary beneficiaries or their legal representatives, down to the death of John B. Webb, and since the death of John B. Webb has been paying the entire income of the estate
 
 *354
 
 to herself and the other residuary beneficiaries or their legal representatives, and has paid over no share of such income to ¿he widow of John B. Webb.
 

 It is difficult to find any distinction between the dispositive ■ clause of the will- construed in this action and the dispositive clause in the case of
 
 Richey, Ex’r.,
 
 v.
 
 Johnson,
 
 30 Ohio St., 288. In that case the testator said:
 

 “I devise my executors or the survivors of them, after the decease of my said wife, shall sell said last-mentioned farm, either at public or private sale, and that the proceeds thereof be divided equally between my brothers and sisters and their heirs — the children of any that may be dead to have the shares of their deceased parents.”
 

 The court said, at page 296:
 

 “These words, ‘Any that may be dead,’ import uncertainty in the mind of the testator.”
 

 And the court then goes on to state that under this dispositive provision the testator has directed that the share of any who would, if living, be entitled to a part of the fund, shall, in the event of the previous death of such contingent legatee, be paid to his or her heirs. “The gift itself, and not merely the time of payment, remained contingent, therefore, during the life of the widow. The persons entitled to the enjoyment of the fund could not be ascertained till her death.”
 

 It was held in the syllabus that as the fund could not be raised until the death of the widow, and was to be divided between persons then living, the interest of the legatees therein remained contingent until that time.
 

 The will of John Webb, Jr., then, created con
 
 *355
 
 tingent interests which were to vest at the time of distribution. If there were no other facts alleged in this petition than the creation of the 'contingent interests under the will and the fact that distribution has not yet been made, the demurrer to the petition would have to be sustained upon the ground that the contingent interest had not vested in John B. Webb at the time of his death. However, the petition, also alleges the postponement of the time of distribution by the trustee, who is herself one of tlie beneficiaries under the trust, her failure to use the income from the real estate for the defraying of the mortgage debt, her distributing such income among the five children, up to the death of John B. Webb, and her failure since the death of "John B. Webb to pay the proportionate one-fifth of such income to John B. Webb’s wife and sole legal representative.
 

 In item twelfth of the codicil to his will, John Webb, Jr., directed his said trustees “to use the remainder, if any, of the net income of my entire estate, real and personal, to pay off the mortgage indebtedness on my real estate. It is my desire that my entire real estate shall be clear of all incumbrance at as early a date as possible.”
 

 In item fourteenth of the codicil to the will, the testator directs the trustees to .use the net income of the remainder of the real estate, after certain specific parcels of real estate are devised, in discharging and paying off all mortgages and obligations thereon, and all other claims against the same, and, when all claims against the real estate are paid, to sell the real estate to pay the legacies, and to pay the remainder of the entire proceeds of such
 
 *356
 
 real estate, and all money belonging to the estate in tbeir hands, “to my five children, John B. Webb, Henry Storrs Webb, Hannah M. Biles, Mary Rebecca Sorin and Lydia P. Sims, and to the issue of any deceased child
 
 per stirpes.”
 

 We must assume under the pleadings that these directions of the will have been completely ignored for some twenty-two years by Hannah M. Biles, the trustee.
 

 As a general rule, a trustee’s authority over the trust property is defined and limited by the instrument creating the trust, and he should be strictly guided by its provisions, and should pursue his power strictly.
 
 Atkinson
 
 v.
 
 Beckett,
 
 34 W. Va., 584, 12 S. E., 717;
 
 Baldridge
 
 v.
 
 Walton,
 
 1 Mo., 520. It is even held that although the will gives the broadest and fullest discretion to executors and trustees, such discretion cannot be exercised to frustrate the testator’s manifest intent.
 
 In re Hall’s Estate,
 
 127 Misc. Rep., 238, 216 N. Y. S., 598.
 

 In
 
 Plummer
 
 v.
 
 Brown,
 
 315 Mo., 627, 287 S. W., 316, a decision of the Supreme Court of Missouri handed down in 1926, it was held that the discretion given testamentary trustees to make payments to beneficiaries, when in their judgment the condition of the estate permits, must be reasonably exercised in good faith, and to further the testator’s dominant purpose as disclosed by the will.
 

 If in the instant case the income of the real estate prior to the death of John B. Webb was sufficient to have discharged the mortgages, and would have ■'made distribution possible under the will, then as a matter of fact the estate-, should have vested before the death of John B. Webb. The trustee could not
 
 *357
 
 ignore the will, and by her unauthorized act determine when the contingent. estate should vest in the beneficiaries. It is the direction of the testator which determines the time of vesting, and the testator directed in unqualified terms that, while the title should vest at the time of distribution, distribution should be seasonably made, because he directed that distribution should follow upon the paying off of the incumbrances at the earliest possible moment. John B. Webb therefore was entitled to participate in the proceeds of this real estate within a reasonable time after distribution could as ,a matter of fact have been made, and the widow, who is his sole beneficiary under his will, has the same equitable right as John B. Webb.
 

 This is an action in equity for distribution by the trustee of the trust estate. 10 Ruling Case Law, 349, Section 99. The question therefore arises whether in this action equity will regard that as being done which should have been done, and will hold that the time of distribution, and hence the time of vesting, accrued at a reasonable time after it was possible to perform the acts enj oined under the will, even though these acts were not performed.
 

 Equity will regard and treat him in whose favor an act should have been performed as clothed, with the same interest and entitled to the same rights as if the act actually had been performed.
 
 Johnson
 
 v.
 
 Palmer,
 
 117 Me., 226, 107 A., 291.
 

 As stated in 1 Pomeroy’s Equity Jurisprudence (4th Ed.), 675, Section 364, equity regards and treats that as done which in good conscience ought to be done. Pomeroy states that textwriters have cor
 
 *358
 
 rectly looked upon this maxim “as the very foundation of all distinctively equitable property rights.”
 

 The doctrine is most often enforced with regard to equitable conversion.
 
 Bouslough
 
 v.
 
 Bouslough,
 
 306 Ill., 24, 137 N. E., 517;
 
 Citizens’ Nat. Bank of Albuquerque
 
 v.
 
 First Nat. Bank of Albuquerque,
 
 29 N. M., 273, 222 P., 935.
 

 While we have been unable to find any case exactly parallel to this in which the maxim has been applied, decisions are not wanting in which the failure by a trustee to perform some act is held not to have defeated an equitable right. Thus in
 
 Temple
 
 v.
 
 City of Coleman
 
 (Tex. Civ. App.), 245 S. W., 264, we have a case where a trustee whose duty it was to probate a will failed to do so. Certain gratuitous grantees from the trustee in an action were urging their claims partly upon the ground of the failure of the trustee to probate the will. It was held that equity regards that as done which ought to be done, and the fact that the will was not probated was held not to affect the validity of the trust.
 

 In
 
 Farmers’ Loan & Trust Co.
 
 v.
 
 Pierson,
 
 130 Misc. Rep., 110, 222 N. Y. S., 532, which was a case where the testator had bequeathed all of the shares qf a corporation to certain trustees • who elected themselves directors,, it was held that the trustees could not take the bequest and decline to pass necessary by-laws to carry out the directions of the will, limiting their power to sell the property of the corporation, and that in default of such action by the trustees equity would consider done what-ought to be done, and would act as though the necessary by
 
 *359
 
 laws had been passed. To the same effect is
 
 Reigel
 
 v.
 
 Wood,
 
 110 Okl., 279, 229 P., 556.
 

 In
 
 Copeland
 
 v.
 
 Warren,
 
 214 Ala., 150, 107 So., 94, it was held in a suit to reform conveyances of land that equity treats as done that which should have been done to carry into effect the intention of the parties, and will give effect to a transaction by fixing the status and right of the parties as if a conveyance had been executed on the date that it should have been executed.
 

 In this instance, since the testator made his intention as to the payment of the mortgages so plain, and hence emphasized his direction for the early vesting of the estate, we hold that the maxim applies.
 

 No motion to make more definite and certain was interposed to this petition. In the absence of such a motion, the petition, although awkwardly drawn and loosely framed, is good against a general demurrer, and the Court of Appeals was correct in remanding the case to the court of common pleas for further proceedings and the taking of testimony with regard to the amount of income which could, during the past twenty-two years, have been devoted to the raising of the mortgages. Judgment of the Court of Appeals affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Kinkade, Robinson, Jones and Matthias, JJ., concur. -