**LASH, Admr. v MILLER et**

Probate Court, Tuscarawas Co.

Decided December 6, 1939.

444

J. E. Patrick, New Philadelphia, for plaintiff.

Musser, Kimber & Huffman, Akron, for administrators of the estate of Charles D. Moore, deceased.

## OPINION

By LAMNECK, J.

This is an action to construe the will of William Miller, deceased, who died on January 7, 1910, which was probated in this court, and for certain instructions of the court, brought by Charles W. Lash, administrator with the will annexed of the estate of said William Miller, deceased.

That portion of the will which relates to this case reads as follows, to-wit:

Second: I give, devise and bequeath to my dutiful wife, Mary Miller, the house and lot (land) which I own in the village of Shanesville, Ohio, together with all the furniture and fixtures therein and on said premises that I may own and have in my possession at my death, the same to be hers to use and belong to her as long as she may live.

Third: It is further my will, that at the death of my wife, Mary Miller, whatever is left of this property of mine, such as the house and lot (land) furniture and fixtures, etc., that the same shall be sold and the proceeds thereof shall be divided between my heirs as follows, viz:

To my grandson Edward Miller, son of Leander Miller, deceased, or his heirs, shall be given the sum of Five Dollars ($5.00), the same to be his full share of my estate.

And the balance of the proceeds of said property shall be divided equally between my two children, Frank Z. Miller and Flora Rosenberry. That is to say, one half of said proceeds to be given to my son Frank Z. Miller, or to his children or their heirs, and one half to my daughter Flora Rosenberry, or her children or their heirs.

Said William Miller left surviving him his widow, Mary Miller who died on August 2, 1938, and two children, Frank Z. Miller who died on October 26, 1913 and Flora Rosenberry who died on February 10, 1932.

On March 4, 1910, Charles D. Moore recovered a judgment against Frank Z. Miller in the sum of $121.26 and $4.30 costs. On April 5, 1910 execution was issued on said judgment and a levy made on one-half of the house and lot described in item two of the will. Alias executions were issued against the one-half of this property at intervals of slightly less than five years each, the last execution having been issued on March 27, 1935.

Charles D. Moore died on March 28, 1939 and on April 3, 1939, Mary E. Lillick and George D. Hartel were appointed administrators of his estate by the Probate Court of Summit County, Ohio.

Said property was sold by said Charles W. Lash, administrator with the will annexed of the estate of William Miller, deceased, on May 8, 1939 under power conferred in the will. There has

been no administration of the estate of Frank Z. Miller, deceased.

The administrator with the will annexed asks the judgment and direction of the court on the following questions:

1. Whether the attempted lien by execution and alias executions issued on the judgment in favor of Charles D. Moore was valid.

2. What interest Frank Z. Miller had in said property during his lifetime.

3. To whom payment of the share of one-half of the residuary estate which was given by said will to Frank Z. Miller, "or to his children or their heirs," should be made.

It is the contention of the administrators of the estate of Charles D. Moore, deceased, that the interest of Frank Z. Miller in the property described in item two of the will of William Miller, deceased, was a vested remainder and became vested on the day William Miller died and that the judgment taken against Frank Z. Miller is now a valid lien against one-half of the remainder of the proceeds of the property described in item two which was sold by Charles W. Lash, administrator with the will annexed of the estate of William Miller, deceased.

Opposed to this is the contention that the interest of Frank Z. Miller was contingent which did not vest until the period of distribution and since Frank Z. Miller died prior to the expiration of the life estate, one-half of the remainder passes to "his children or their heirs" without regard to the purported lien. It is also contended that if Frank Z. Miller had a vested indefeasible interest, the attempted preservation of the purported lien is invalid.

Assuming that Frank Z. Miller had an indefeasible vested interest in the property in question, was the attempted preservation of the purported lien of Charles D. Moore now a valid claim against it?

In the case of **Barkman v Hain**, reported in 5 **Ohio N. P. 508** and 5 **Ohio Decision 474**, Judge Rockel, author of Rockel's Probate Code, in a well reasoned opinion held that where a will provided that the testator's real estate

should be held for a limited period by his wife and daughter and thereafter be sold by the executor and the proceeds divided between his children, the interest of the children vested at the time of the death of the testator and was subject to a judgment lien, the same as any real estate, and upon the land being sold the lien was transferred to the fund arising from such sale. This court concurs in that conclusion, which is also supported by the case of **Keenan v Wilson, 19 Oh Ap 499.**

Under such a levy a judgment creditor can have the real estate interest of a judgment debtor sold after his death if such sale is consummated within five years after the issuance of execution. (**Bigelow v Renker, 25 Oh St 542**).

But it is well settled in Ohio that an execution issued after the death of a defendant, upon a judgment rendered in his lifetime, and levied upon land of which he died seized without having the action revived, is void. (**Massie v Long, 2 Ohio 287; Cartney v Reed, 5 Ohio 221**).

Since the alias executions issued in this case are a nullity, and in the absence of a revival, what are the rights of the judgment creditor at this time in the proceeds of the realty, assuming that Frank Z. Miller had an indefeasible vested interest therein?

In **Ambrose v Byrne, 61 Oh St 146. 55 N. E. 408**, it was held "that where a judgment is a subsisting lien on the lands of the debtor at the time of his death, it is not necessary thereafter to issue execution upon it in order to preserve the lien. It is entitled to share in the proceeds of the land, when sold by the personal representative, according to its priority at the time of the testator's death, although execution be not issued thereon within five years from its rendition or the date of the last execution."

In that case, the executor sold the real estate of the decedent to pay debts. At the time of the decedent's death there was a valid judgment lien against

446

the realty sold by the executor. The realty however was sold over five years after the date the last execution was issued. The judgment had not been revived.

The court held that Sec. 5380 Revised Statutes, now §11663, GC, providing, "that if execution on a judgment rendered in a court of record in this state, or a transcript of which has been filed as hereinbefore provided, be not sued out within five years from the date of the judgment, or if five years intervene between the time of the last execution issued thereon and the time of suing out another execution, such judgment shall be dormant, and cease to operate as a lien on the estate of the judgment debtor" was inapplicable. The court's conclusion was based on §6165 Revised Statutes which provided in part that the money arising from the sale of real estate by a fiduciary to pay debts should be distributed:

"Second. To the payment of mortgages and judgments against the deceased, according to their respective priorities of lien, so far as the same operated as a lien on the estate of the deceased, at the time of his death."

This section substantially in the same form became §10809, GC, and on January 1, 1932, became §10510-46, GC, without substantial change in so far as the priority of judgments against deceased persons was concerned.

However, §10510-46, GC was amended by the legislature effective September 2, 1935, and item two of this section was changed as follows:

"2. To the payment of taxes, penalties, and assessments then due, against such real estate and to the payment of mortgages and judgments against the ward or deceased person, according to their respective priorities of lien, so far as they operated as a lien on the real estate of the deceased at the time of sale * * *."

The writer had the honor to be a member of the Probate Code Committee of the Ohio State Bar Association which submitted this amendment to the legislature and it was the intention of the committee in having this amendment enacted to change the law as announced in Ambrose v Byrnes, supra.

The committee was of the opinion that changing the statute giving judgments priority "so far as they operated as a lien on the estate of the deceased, at the time of his death," to "so far as they operated as a lien on the real estate of the deceased at the time of sale" that the law would be as follows: That the death of a judgment debtor after the five year period had partly run, would not interrupt the running of the statute unless a claim had been presented to the fiduciary and allowed, (Taylor v Thorne, 29 Oh St 569), or unless the judgment creditor followed the provisions of §11649, GC, which reads as follows: "In case of the death of either or both parties after judgment rendered, and before its satisfaction, his or their representatives, real or personal, or both, as the case requires, may be made parties to the judgment, and it be revived by an action brought for that purpose; or they may be made by parties thereto in the manner prescribed for the revival of actions before judgment. Such judgment may be rendered and execution awarded as might or should have been given or awarded against the representatives real or personal, or both, of such deceased party."

It is well settled in Ohio that where the debt accrues at the death of a debtor, the statute of limitations is suspended (Hoiles v Riddle, 74 Oh St 173, 78 N. E. 219), but where a debt has matured and the statute is running at the decedent's death, there is no tolling or suspension of the statute. (Granger v Granger, 6 Ohio 35).

In this last named case, the court made the following observation: "We think it well settled, in ordinary cases, that where the statute of limitations once begins to run upon any subject, it continues to run to its completion, unless interrupted by some act of the

party setting up the statute, which places the claim within some of the exceptions provided in the act. The death of the debtor is not such an act, and does not interrupt the running of the statute; nor does the delay in taking out administration. If the creditor would save his debt from the statute bar, he should take out administration himself."

That §11649, GC will be applicable to all judgment liens taken after September 2, 1935, because of the amendment to §10510-46, GC effective as of that dates is obvious, but can this amendment affect the status of the lien of Charles D. Moore, assuming that Frank Z. Miller had an indefeasible vested interest?

**Sec. 28 of Art. II, Ohio Constitution** denies to the General Assembly the power to pass retroactive laws. It has been definitely decided in numerous cases that retroactive laws refer to those which create and define substantive rights, and which either give rise to, or take away, the right to sue or to defend actions at law. It has also been held that this provision of the constitution did not apply to a statute remedial in its operation. Whether this amendment to §10510-46, GC is remedial in its effect is not necessary for the court to decide. If not it could not apply to a judgment already in effect. If it is remedial it would likewise not apply because there is no provision in the act in which §10510-46, GC was amended making it applicable to pending actions. §26, GC provides that "wherever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions, or proceedings, civil or criminal, and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions, or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

We must therefore conclude that the amendment to §10510-46, GC in no way affected the purported lien of Charles D. Moore as it existed prior to the amendment.

The administrators of the estate of Charles D. Moore in support of their contention that the interest of Frank Z. Miller was a vested indefeasible interest have cited to the court among other cases, the following: **Johnson v Johnson, 51 Oh St 446,** and **Tax Commission v Oswald, 109 Oh St 36, 141 N. E. 678.**

In the Johnson case, the will gave the widow a life estate with "full power to bargain, sell, convey, exchange or dispose of the same as she may think proper; but if at the time of her decease, any of my said property shall remain unconsumed, my will is that the same be equally divided between my brothers and sisters, and their children." The court held that the interest of the brothers and sisters was a vested right, which could not be divested except for the support of the widow or for the benefit of the estate.

In the Oswald case, the will bequeathed all the decedent's property to his widow with "full power to sell, deed and transfer, any or all of it, as she may deem best to better her condition," and "after the death of my wife whatever remains of my estate I will and bequeath as follows: One half (½) to J. W. Oswald or his issue; one half (½) to J. M. Oswald or her issue." It was also provided that if at the time of distribution either of the brothers was deceased, without leaving issue, his share should go to the other brother or his issue.

The court held in this case, that what may remain unconsumed was a vested remainder in the whole of the property, subject to be divested in part from time to time, or in whole by the exercise of the power or by the provisions of the will.

Along the same line is the case of **Stahl v Mohr, 35 Oh Ap 411, 172 N. E. 431,** wherein the will provided that "Upon the death of my wife, my prop-

erty both real and personal shall be sold by my executor, and the proceeds, arising from said sale, shall be distributed equally among my children." It was held in this case that the remainder estate vested in the children at the death of the testator.

It should be noted that in neither Johnson v Johnson, nor in Tax Commission v Oswald, supra, was there any direction to the executor to sell what property remained unconsumed and distribute the proceeds. In Stahl v Mohr, supra, there was such a direction to sell but no one was designated as a distributee except "my children."

In Richey v Johnson, 30 Oh St 288, the decedent's will provided, "I devise that my executors, or the survivor of them, after the decease of my said wife, shall sell said last mentioned farm, either at public or private sale, and that the proceeds thereof be divided equally between my brothers and sisters and their heirs—the children of any that may be dead to have the shares of their deceased parents." It was held in this case that the interests of the remainder legatees was contingent and did not vest until the death of the wife.

Likewise it was held in Webb v Biles, 27 Oh Ap 197, 161 N. E. 49, that where a will vested all of property in a trustee, who was to pay mortgages and other claims, and to sell real estate, paying legacies out of proceeds, and using balance for division among children, "and to the issue of any deceased child per stirpes" the interest of the children as distributees was contingent, and did not vest until time of distribution arrived within terms of will.

In the case of Kecheley v Kecheley, 38 Oh Ap 61, 175 N. E. 37, the decedent's will contained a provision giving a life estate to a son and then to the son's wife in a farm, and "upon the death of this son, and the death or remarriage of his widow, mother of his chldren, this property is to be divided, share and share alike, among his children, or if such issue fail, among the surviving grandchildren." It was held in this case that the children's interest was

contingent and did not vest until after the death of the life tenants.

In Barr v Denney, 79 Oh St 358, 87 N. E. 267, the decedent's will contained this clause, "After the death of my wife, I desire that the whole of my property, both real and personal, be sold by my executor, and after expenses are paid to distribute equally to my legal heirs." Under this provision it was held the remainder was a contingent interest which did not vest until the period of distribution.

In the instant case, the testator gave no interest in the real estate in question or in its proceeds to either Leander Miller, Frank Z. Miller or Flora Rosenberry by way of a direct devise or bequest. The gift is found in the direction to distribute the proceeds of the sale. He did not intend that either of the aforesaid persons should have any beneficial use or enjoyment of such real estate as land. The life use of said property was given to the widow with the possible power to consume which she did not exercise.

The thing to be distributed in this case is not land but money, the administrator with the will annexed having sold the land in question under power conferred in the will. His power to do so is not disputed.

Conversion was necessary before distribution, and the remainder gift was therefore one of personalty and not land. A court must regard the realty in this case as having the character of personalty which the testator impressed upon it.

Who then are the legatees among whom distribution is to be made? Are they the persons who answer the description of the will at the time of the death of the testator, or the persons who answer the description at the time of distribution?

In 16 O. Jur. at page 468, Sec. 92, we find the following: "A remainder which is otherwise vested is none the less vested because it is liable to be divested by a subsequent event, nor is it made contingent by the fact that the interest of the remainderman may be divested by his death before the death of the life

tenant. There is a clear distinction between contingent estates which may vest, and vested estates which may be defeated upon the happening of a future event. In Ohio vested remainders are not infrequently subject to divesting contingencies."

This statement was confirmed by the Court of Appeals of this district in the case of **Simpson v Welsch, 44 Oh Ap 115, 184 N. E. 24.**

The court concludes from this that the interest of Frank Z. Miller and Flora Rosenberry may be construed to be a vested interest. If vested, could such vested interest be divested by the death of the rmainderman before that of the life tenant?

In **Peck v Chatfield, 24 Oh Ap 176,** it was held that an interest under a will is contingent, if the contingency is attached to the thing given, or to the person to take. In the instant case, the property as real estate did not vest in the remainderman upon the death of the life tenant. Something had to be done—a sale made. A vested interest in a remainderman is one that will take effect immediately upon the death of the life tenant without anything happening but the death.

In the case of Ebey v Adams, 135 Ill. 80, the will provided: "Upon the death or remarriage of my wife, Minerva, it is my will, and I do so direct, that all my estate, real and personal, shall be sold," and from the proceeds certain legacies be paid, "and the balance of the proceeds of my estate my executors are hereby directed to distribute among my children or their heirs." One of the testator's children, who died before the life estate terminated, conveyed all her interests before the death of the life tenant to a third party. The court held that the child's children took the fee as against the alleged purchaser.

The court held that the effect of the word "or" was to make a substitutionary gift, which would, and did in fact, operate to divest any previously vested interest in the child who died prior to the life tenant. Any vested interest which the purchaser took from this child was held to be divested by this child's death prior to that of the life tenant. This case is exactly parallel to the instant case.

The court feels that the deciding weight of authority in this and other states is that a gift "to A or B" succeeding a life estate is a substitutional gift, and that it can not be determined who is to take until the termination of the life estate.

While Charles D. Moore would have had a valid lien against the interest of Frank Z. Miller had said Frank Z. Miller survived the life tenant, his lien can rise no higher than its source, and since Frank Z. Miller died prior to the death of the life tenant, his interest was divested and the lien likewise falls with the remainder.

It will therefore be held in this case that:

1. That Frank Z. Miller had a vested remainder in one-half of the proceeds of the sale of the house and lot (land) owned by the testator in the village of Shanesville, Ohio, after the payment of $5 to Edward Miller or his heirs from the gross sale, but that said vested remainder of Frank Z. Miller was divested by his death prior to the death of Mary Miller.

2. That the judgment of Charles D. Moore taken on March 4, 1910 against Frank Z. Miller and the subsequent lien taken thereunder against the interests of Frank Z. Miller in the house and lot (land) owned by the testator in the village of Shanesville, Ohio, was divested by the death of Frank Z. Miller prior to the death of Mary Miller, and is not now a lien in any of the proceeds of the sale of said property.

3. That the balance of the proceeds of the sale of the house and lot (land) which the testator owned in the village of Shanesville, after the payment of $5 to Edward Miller or his heirs, shall be divided, one-half (½) to Flora Rosenberry, or her children, or her heirs, and

one-half (½) share and share alike to London W. Miller, Russell L. Miller, and Frances E. Jones, children of Frank Z. Miller, deceased.

Exceptions noted.