510 P.2d 520

**William Richard LARSEN, Jr., Appellant,**

**v.**

**Marsha Mann PASKETT, Respondent,**

**Claimants in the estate of Cilma Wheeler Larsen, Deceased.**

**No. 13090.**

Supreme Court of Utah.

May 25, 1973.

Everett E. Dahl, Midvale, for appellant.

Mark S. Miner, LeGrande P. Backman, Salt Lake City, for the estate.

CROCKETT, Justice:

This is a contest between William Richard Larsen, Jr., the son, and Marsha Mann Paskett, foster daughter, as to which of them is entitled to a certain portion of the estate of Cilma Wheeler Larsen. Upon a trial to the court it interpreted the language of the will (a superseding codicil) in favor of Marsha. William appeals.

Mrs. Larsen died on September 8, 1971 leaving an estate in Salt Lake County consisting of properties appraised in this proceeding at $370,000. She had made a will in April 1968; and later had changed it on two occasions by executing codicils. We are concerned only with the final one which was duly executed on August 15, 1971, three weeks prior to her death. The bequests material here are:

(1) . . . to Marsha Mann Paskett, who has been very dear to this Testatrix, the sum of $10,000, provided she survives me.

(3) . . . to my daughter, Dixie Larsen, the house at 3909 South 6000 West., Salt Lake City, Utah, with sufficient ground to serve said house and furnishings and furniture in said house. The value . . . will balance gifts already given by me to my son, William Richard Larsen, Jr. The said Dixie Larsen to have no interference in her ownership of the above property from William Richard Larsen, Jr., and the said William Richard Larsen, Jr. to move from said premises within ten days of my death. In the event he refuses to do so, I give the said William Richard Larsen, Jr. the sum of One Dollar ($1.-00) and no interest in my estate.

(4) . . . all of the rest, residue and remainder of my property . . . to LeGrand P. Backman, as Trustee . . . for the following uses and purposes:

A. To pay to my daughter, Dixie Larsen, the sum of Four-hundred and no/100 ($400.00) Dollars per month for her care and maintenance for a period of ten (10) years. . . .

B. To pay to my son, Willam Richard Larsen, Jr., the sum of One-hundred-fifty and no/100 ($150.00) Dollars per month for his care and maintenance for a period of ten (10) years . . .

. . . . . .

D. Ten (10) years from the date of my death, said Trustee is authorized to dis-

tribute the residue of said Trust estate as follows: two-thirds to Dixie Larsen and one-third to William Richard Larsen, Jr., subject to the condition that said William Richard Larsen, Jr., shall be capable and living worthy in the discretion of the Trustee to receive his share of said Trust and in the event that the said William Larsen, Jr., is not capable and worthy then said Trustee shall pay to the said William Richard Larsen, Jr., the sum of One and no/100 ($1.00) Dollar and be discharged from any further obligation under said Trust to the said William Richard Larsen, Jr., and the one-third of said Trust estate shall then be distributed one-half to Dixie Larsen and one-half to the surviving brothers and sisters of the issue of said brothers and sisters per stirpes of my late husband, William Richard Larsen.

(5) *In the event of the death of Dixie Larsen prior to receiving her share of said estate* either under the bequest or as beneficiary of said Trust, I hereby give and devise and bequeath the share of said estate to which the said Dixie Larsen would be entitled if living, to any surviving issue and if no issue, one-half to my friend Marsha Mann Paskett and one-half to the issue of the brothers and sisters per stirpes of the brothers and sisters of my late husband, William Richard Larsen.

The testatrix was survived by her son, William Richard Larsen, Jr., age 42, her daughter, Dixie Larsen, age 34, and Marsha Mann Paskett who, since the age of one, had lived with but never been legally adopted by the testatrix. On November 10, 1971, two months after the death of the testatrix, Dixie Larsen, having never married, died without issue.

The controversy focuses upon paragraph five as quoted above. The argument of the appellant William is that all of the property and interest in the estate which his sister Dixie was to receive under the will vested in her immediately upon the death of his mother; that because this vesting in Dixie had thus occurred two months prior to her death, she should be deemed to have "received" that portion of the estate; and that thus the condition precedent to the gift over to Marsha Paskett and the heirs of testatrix's husband failed; wherefore, William claims that that portion of the estate comes to him as the only heir of his sister Dixie.

 In support of his argument, defendant cites cases to the effect that the term "receiving" through an estate is synonymous with "vesting," or with the acquiring of *the right to receive*; and that upon decedent's death the property entitlement should be deemed to be "vested in" or "received" by the heir or legatee, subject

to probate.[1] We agree with the soundness of that doctrine under appropriate circumstances. It was correctly so applied by the trial court as to the unconditional devise of the home property in paragraph (3) of the will quoted above.

The trial court in a Memorandum Decision made a comprehensive and helpful analysis of the contentions of the parties and the provisions of the will and codicils. In it he stated: ". . . . it seems to me that the devise of the house to Dixie was clear and unequivocal . . . . to be Dixie's upon the death of the testatrix, with William to leave the house within ten days . . . . to assure no interference from him in Dixie's ownership . . . . Dixie's death two months after her mother's death does not alter that bequest. It is thus my opinion that Dixie *received* the house upon the death of her mother within the meaning of the term as used in the will and that ownership of the house was in Dixie and would of necessity be a part of her estate."[2]

But the trial court adopted the view, with which we are in accord, that the rule as to immediate vesting of property in the heir or the devisee upon the decedent's death does not apply where it appears from the will that the testatrix had a different purpose in mind and the will states conditions precedent to such vesting. The fact is that it gives way to a more basic rule, which is the most fundamental rule relating to the interpretation of wills: that the intent of the testatrix as expressed in the will governs.[3] This is to be ascertained and carried out by taking the words of the will in accordance with their ordinary and usual meaning, unless it clearly appears that some specialized or technical meaning was intended.[4] Attempting to understand and appreciate appellant's argument as to uncertainty and ambiguity may seem to present difficulty. But neither the

1. Citing authority to the effect that in appropriate circumstances the word "receiving" should be construed in the sense of "vesting in right" rather than in the sense of coming into or being in actual possession. In re Werner's Estate, 142 Misc. 702, 256 N.Y.S. 372 (1932); In re Greene's Will, 240 Wis. 452, 3 N.W.2d 704 (1942).

2. Neither the probate of Dixie Larsen's estate nor the disposition of her property is involved here, though it is stated in the record that William is her only heir and thus presumably her property would pass to him.

3. Sec. 74–2–1 U.C.A.1953 states "a will is to be construed according to the intention of the testator . . ."; See also In re Poppleton's Estate, 34 Utah 285, 97 P. 138 (1908); In re Johnson's Estate, 64 Utah 114, 228 P. 748 (1924).

4. See Sec. 74–2–8 U.C.A.1953 which provides that the words of a will are to be taken in their ordinary and grammatical sense unless a clear indication to the contrary is shown.

motivation for the argument, nor the will itself, presents any such difficulty if the foregoing rule is applied, and the entire contents of the will and codicils are considered together as they should be.[5]

In doing so, the trial court correctly thought that according to the ordinary and usual meaning of the words used the property in dispute was conveyed to the trustee, to be held and used by him for the purposes and in accordance with the conditions stated in paragraph 5; and that what the trust conferred upon Dixie as beneficiary *was the right to be paid the $400 per month for ten years*, and thereafter distribution as provided; and further, that in the provision that "in the event of the death of Dixie Larson prior to receiving her share of said estate . . ." then there was the gift over to Marsha Paskett and others, the phrase "prior to receiving her share of the estate" means prior to her coming into actual possession of the property so held by the trustee. On this basis he rejected appellant's contention that Dixie should be deemed to have "received" the property.

In considering the correctness of the trial court's interpretation some further thoughts seem pertinent. The testatrix appears to have had clearly in mind not only her mother-child relationship to her children, but also her personal relationship and obligations to them; and what she desired to leave to them, and to the other objects of her bounty. Concerning all of this she made clear and unequivocal statements in her will and codicils. This includes the fact that she had made what she thought was proper but somewhat guarded provision for her son, appellant William. She neither expressed nor intended any further provision for him except through the trust, and it seems reasonable to believe that any further sharing in the estate by him would necessarily be subject to the conditions stated in connection with it. (All emphasis added.)

Affirmed. Costs are awarded to respondent Marsha Mann Paskett as against appellant William Richard Larsen, Jr.

CALLISTER, C. J., and ELLETT, HENRIOD and TUCKETT, JJ., concur.

---

5. Estate of Manatakis v. Walker Bank & Trust Co., 5 Utah 2d 412, 303 P.2d 701, citing Secs. 74–2–1 and 74–2–2 et seq.

U.C.A.1953; Wallich v. Wallich, 10 Utah 2d 192, 350 P.2d 614.