665 P.2d 1041
Aram Poulsen ALLEN, deceased,

**Boyd K. Allen, Appellant,**

v.

**Rhea SHEA, La Rue Lemmon and Edrie A. Kingsbury, Personal Representative of the above estate, Respondents.**

No. 14277.

Supreme Court of Idaho.

June 15, 1983.

Raymond N. Malouf, Jr., Logan, Utah, and Randall Budge of Racine, Huntley & Olson, Pocatello, for appellant.

Archie W. Service of Green, Service, Gasser & Kerl, Pocatello, for respondents.

BISTLINE, Justice.

This is an appeal from a district court decision affirming a magistrate court order finding that Lucy Allen died prior to the distribution of her husband's estate within

the terms of his will. A.P. Allen died testate on May 11, 1975. He was survived by his wife, Lucy Allen, and five children. He left a one-page will which provided:

"THIRD. I give and devise the residue of my estate, be the same real or personal property, unto my wife, Lucy K. Allen, if she shall survive me."

However, a fifth provision modified the third:

"FIFTH. In the event my wife shall survive me, but dies *prior to the distribution of my estate,* my estate shall be distributed to the persons named in Paragraph Fourth." (Emphasis added.)

Lucy Allen was appointed as personal representative and the decedent's will was informally probated on November 5, 1975. Lucy Allen filed an inventory of assets on February 11, 1976. The estate assets included a one-half community interest in the Allen farm and in certain personal assets. Lucy Allen filed a United States Estate Tax Return and an Idaho Inheritance Tax Return on February 11, 1976.

In January of 1977, the attorney for the estate prepared the documents necessary to close administration of the estate. However, these documents were not immediately filed due to pending problems with the IRS resulting from a tax audit in early 1977. This audit resulted in a $36,413.17 estate tax deficiency assessment based upon a disputed valuation of the farm. The estate appealed the assessment and negotiated with the IRS over an extended period, reaching a compromise in January of 1979, after which a check in payment of the deficiency was transmitted to the IRS. Under the compromise the estate paid approximately $26,000 less in taxes than was initially assessed. Five days after the compromise on January 23, 1979, but before payment of interest on the stipulated assessment was submitted to the IRS, Lucy Allen died.

Upon a petition for an order construing the will, compelling an accounting by the personal representative and directing super-vised administration filed by the daughters of A.P. and Lucy Allen, who are the respondents Rhea Shea and LaRue Lemmon, the magistrate court held that because Lucy Allen did not survive the distribution of A.P. Allen's estate the devise to her failed and accordingly she did not take under A.P. Allen's will. The magistrate furthermore held that Lucy Allen did not act unreasonably in delaying distribution of the estate pending the federal tax audit. On appeal to district court the magistrate court determination was affirmed. *Estate of Allen,* No. 37551 (6th Dist., Idaho 1981). Boyd Allen, son and principal heir to Lucy Allen's estate,[1] seeks review in this Court.

## I.

■ The district court heard this case in its appellate capacity and based its decision on the record from the magistrate court. On appeal to this Court we therefore review the record before the magistrate independently of the decision of the district court. *Nicholls v. Blaser,* 102 Idaho 559, 633 P.2d 1137 (1981); *Koester v. Koester,* 99 Idaho 654, 586 P.2d 1370 (1978).

■ The basic premise which must be applied in this case is that "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions." I.C. § 15–2–603; *Estate of Kerlee,* 98 Idaho 5, 557 P.2d 599 (1976); *Dolan v. Johnson,* 95 Idaho 385, 509 P.2d 1306 (1973); *White v. Conference Claimants Endowment Commission,* 81 Idaho 17, 336 P.2d 674 (1959). The language of the will is to be given its ordinary and well understood meaning. *Youmans v. West,* 203 S.C. 480, 28 S.E.2d 47 (S.C.1943); *Larsen v. Paskett,* 29 Utah 2d 360, 510 P.2d 520 (Utah 1973).

■ The magistrate court held that the language of the will given its plain and ordinary meaning "require[d] the decedent's wife to survive until actual distribution in order to receive distribution of his estate." We agree. The language in the fifth paragraph cannot logically be given any other construction than that, as a condition prece-

---

1. In June 1977, Lucy Allen executed a will      devising the farm to her son, Boyd Allen.

dent to taking under the will of her husband, Lucy Allen necessarily had to survive until distribution. This conclusion is supported by cases from other jurisdictions in which similar testamentary provisions were construed.

In *Youmans v. West, supra,* the Supreme Court of South Carolina interpreted the following similar testamentary provision, "in the event that any legatees . . . die before the date of my death or before the final settlement and distribution of my estate that the share herein devised to them shall go to their widow or widower and children . . . ." 28 S.E.2d at 49 (emphasis in original deleted). In that case the executrix had paid all the estate liabilities except for the tax liabilities thereof and had settled a portion of the estate prior to the death of one of the legatees. The court held that there was no vesting of that portion of the estate which had not been distributed to the legatee prior to her death. The court reasoned that:

"The quoted language has a clear, unambiguous meaning, and I can find nothing from a reading of the whole will that requires it to be disregarded, or that requires it to be given a meaning other than its ordinary, literal interpretation. The fact that the ordinary meaning of the language used by the testator delays the vesting of, and the right to, his property, and makes uncertain the time and persons who would ultimately be entitled to receive it, were all circumstances that no doubt the testator considered at the time of the making of his will. There is no law that prohibited the testator from creating such delay and uncertainties as the literal interpretation of the language he used embodied. And we can well understand why a testator might wish to provide that if those named as beneficiaries are not living at the time of distribution, his property should go to others; otherwise, his property might go to strangers. Having the right to so make his will, it is the duty of the court and his executrix to carry it out as written." 28 S.E.2d at 49.

*See In re Hampe's Estate,* 85 Cal.App.2d 557, 193 P.2d 133 (Cal.App.1948) (holding that the provision "In the event that [the legatee] shall die prior to distribution [of my estate]" shall be interpreted so "that if the legatee is not alive on the date of the entry of the decree of distribution the legacy lapses." *Id.* 193 P.2d at 135); *In re Jennrich's Estate,* 197 Minn. 162, 266 N.W. 461, 463 (Minn.1936) (holding that title did not vest until time of distribution where will provided, "In the event that any of my daughters die after my death without leaving issue, and before my estate is settled, so much of my estate coming to my said deceased daughter or daughters . . . shall then descend to my children who shall survive such deceased daughter or daughters"); *In re Wraught's Estate,* 347 Pa. 165, 32 A.2d 8 (Pa.1943) (holding that the testamentary provision "should my said wife, Alice M. Wraught, die before the settlement of my estate" delayed vesting until the estate was distributed). *See also In re Clarke's Estate,* 103 Cal.App. 243, 284 P. 231 (Cal.App.1930); *Starr v. Willoughby,* 218 Ill. 485, 75 N.E. 1029 (1905); *Dameron v. Lanyon,* 234 Mo. 627, 138 S.W. 1 (Mo.1911). *Contra In re Wengerd's Estate,* 143 Pa. 615, 22 A. 869 (Pa.1891).

Based on our construction of the will and upon our reading of the foregoing authorities, we hold that the magistrate court did not err in its determination that A.P. Allen clearly expressed the intent in his will that Lucy Allen's interest in his estate would not vest until distribution of the estate had been completed.

Boyd Allen advances several arguments in support of the proposition that Lucy Allen should not have been required to survive until A.P. Allen's estate was distributed in order to take under his will. He alternately argues that: the requirement in paragraph five that Lucy Allen survive until distribution was merely an attempt to define survival which should be stricken because Lucy Allen clearly survived A.P. Allen; that the language should be disregarded because it did not appear in paragraph three where the requirement of survival was set forth; that the language is a

mistake which appears on the face of the will; that A.P. Allen did not intend distribution to mean anything more than actual survival to a point at which Lucy Allen would have use of the farm; and lastly that we should construe the will in favor of early vesting of the estate in Lucy Allen.

■ We need not address these arguments in any detail given our prior holding that A.P. Allen's will shows that he intended to require that Lucy Allen survive him until his estate was distributed in order to take under his will. As stated before, "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions." I.C. § 15–2–603. If the testator's intent can be determined from the face of his will, that intent, unless it is in contravention of some established rule of law or public policy,[2] must be given effect. *White v. Conference Claimants Endowment Commission,* 81 Idaho 17, 27, 336 P.2d 674, 679 (1959); *In re Heazle's Estate,* 72 Idaho 307, 240 P.2d 821 (1952). *See* 95 C.J.S. § 590 (1957) and cases cited at n. 52 therein. Since the testator's intent can be, and has been, ascertained from the face of his will, we need not address Boyd Allen's preceding arguments which attempt to give judicially created rules of construction precedence over the testator's manifested intent. Such rules of construction may only be used as an aid in ascertaining the testator's intent, if that intent cannot be ascertained from reading of the will itself. *White v. Conference Claimants Commission, supra; In re Heazle's Estate, supra.* Having determined the testator's intent, we need dwell no further on arguments advancing rules of construction.

■ Boyd Allen asserts that Lucy Allen unreasonably delayed distributing A.P. Allen's estate and that her interest under the will should be held to have vested at the time distribution *should have* been made. In *In re Estate of Taylor,* 66 Cal.2d 855, 59 Cal.Rptr. 437, 428 P.2d 301 (Cal.1967), the rule was set out that "vesting cannot be postponed by unreasonable delay in preparing an estate for distribution and that when there is such a delay contingent interests vest at the time distribution should have been made." *Id.* 59 Cal.Rptr. at 438, 428 P.2d at 302. The magistrate court found that Lucy Allen did not unreasonably delay distributing the A.P. Allen estate. This determination was based upon the following facts.

A.P. Allen died on May 11, 1975. Lucy Allen filed United States Estate Tax and Idaho Inheritance Tax returns on February 11, 1976. The federal tax return was audited by the IRS in early 1977. This audit resulted in a $36,413.17 estate tax deficiency assessment. After extended negotiations with the IRS, a compromise was finally reached on January 18, 1979, which resulted in the estate paying approximately $26,000 less in taxes than those initially assessed. Lucy Allen died five days later on January 23, 1979.

It should be noted that the estate could not properly be closed until both federal and state estate taxes and the interest thereon were paid or otherwise provided for. *See* I.C. § 15–3–1003.[3] *See also In re Small's Estate,* 27 Wash.2d 677, 179 P.2d 505 (Wash.1947) (overruled in part on other grounds *Cody v. Herberger,* 60 Wash.2d 48, 371 P.2d 626, 628 (1962)), holding that "[t]he debts of the deceased and the expenses of administration must be paid before distri-

---

**2.** No contention has been made by appellant that this provision is in contravention of an established rule of law or public policy.

**3.** I.C. § 15–3–1003 provides that a personal representative may close an estate by filing with the court a statement that he has:

"(2) fully administered the estate of the decedent by making payment, settlement or other disposition of all claims which were presented, expenses of administration and estate, inheritance and other death taxes, ex-

cept as specified in the statement, and that the assets of the estate have been distributed to the persons entitled. If any claims remain undischarged, the statement shall state whether the personal representative has distributed the estate subject to possible liability with the agreement of the distributees or it shall state in detail other arrangements which have been made to accommodate outstanding liabilities; . . . ."

bution of the personal property can be made." *Id.* 179 P.2d at 508. The federal estate tax was only determined and paid five days before Lucy Allen's death. The remainder of the estate liability remained to be computed at this time. If Lucy Allen had closed the estate prior to payment of the remaining estate tax obligations, she might have incurred personal liability for so doing. *See* I.C. § 14–405 ("A personal representative who has transferred property or an interest in property for value shall be personally liable for [Transfer and Inheritance Tax Act] taxes to the extent of the proceeds realized upon such transfer.").

The facts of this case demonstrate that there is substantial and competent evidence to support the magistrate's finding that Lucy Allen, as personal representative of the estate of A.P. Allen, acted reasonably in negotiating with the IRS and in delaying distribution of the estate until a final resolution of the estate's tax liability was made.

The magistrate court found that Lucy Allen did not survive until A.P. Allen's estate was distributed. Although counsel for appellant conceded at oral argument that "[Lucy Allen] technically hadn't received distribution of A.P. Allen's estate prior to her death," appellant argues that the estate was *de facto* distributed prior to Lucy Allen's death. He argues that under I.C. § 15–3–709,[4] which requires the personal representative to take possession of the estate and permits her to surrender possession of the property to the persons presumptively entitled thereto, a *de facto* distribution had occurred because Lucy Allen took possession of the property to which she was presumptively entitled under the will. However, this argument ignores the fact that the personal representative exercises control over the property of the estate, *in her fiduciary capacity,* until the close of administration of the estate. *Blake v. Blake,* 69 Idaho 214, 205 P.2d 495 (1949); *In re Anderton's Estate,* 67 Idaho 160, 174 P.2d 212 (1946). I.C. § 15–3–711 provides that: "Until termination of his appointment a personal representative has the same power over the title to property of the estate that an absolute owner would have, *in trust however,* for the benefit of the creditors and others interested in the estate." *See* I.C. § 15–3–712 (providing that the personal representative is liable for damage or loss to the estate resulting from breach of her fiduciary duty). Therefore, neither the act of controlling the estate property in her fiduciary capacity as personal representative nor the act of possessing the estate property as the beneficiary presumptively entitled thereto is sufficient to constitute *de facto* distribution.

There being substantial and competent evidence to support the magistrate's finding that Lucy Allen died prior to the distribution of A.P. Allen's estate, we hold that the district court did not err in affirming the magistrate court decision that Lucy Allen's interest under the will lapsed.

Accordingly, the decision of the district court is affirmed. Costs to respondents.

DONALDSON, C.J., SHEPARD and BAKES, JJ., and McFADDEN, J., Pro Tem., concur.

---

4. I.C. § 15–3–709 provides that:

"Duty of personal representative—Possession of estate.—Except as otherwise provided by a decedent's will, every personal representative has a right to, and *shall* take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to *the person presumptively entitled* thereto unless or until, in the judgment of the personal representative, possession of the property by him will be necessary for purposes of administration. The request by a personal representative for delivery of any property possessed by an heir or devisee is conclusive evidence, in any action against the heir or devisee for possession thereof, that the possession of the property by the personal representative is necessary for purposes of administration. The personal representative shall pay taxes on, and take all steps reasonably necessary for the management, protection and preservation of, the estate in his possession. He may maintain an action to recover possession of property or to determine the title thereto." (Emphasis added.)