873 P.2d 909

Marjorie **HINTZE** and Bonnie Colyer, Co–Personal Representatives, Appellants–Appellants on Appeal,

v.

John P. **BLACK**, Respondent–Respondent on Appeal.

No. 20521.

Court of Appeals of Idaho.

April 21, 1994.

Park & Burkett, Boise, for appellants. W. Anthony Park, argued.

Hall & Friedly, Mountain Home, for respondent. Jay R. Friedly, argued.

LANSING, Judge.

By this appeal we are asked to determine the meaning of a clause in a will which makes a bequest to a legatee "provided he survive distribution thereof to him." Appellants Marjorie Hintze and Bonnie Colyer, personal representatives of the estate, ask this Court to hold that "distribution" means any trans-

fer of estate assets to the legatee during the course of the administration of the estate. The respondent, John Black, asks us to hold that "distribution" requires an order of the court approving the transfer or a final settlement or closing of the estate. We conclude that the interpretation of the will advocated by Black, and adopted by the magistrate below, is correct.

## I.

Amy Minsch died on February 2, 1991, in Mountain Home, Idaho. In 1963, while a resident of California, she executed a will prepared by an attorney in that state.[1] Her will provided:

> I give, devise and bequeath all of my estate ... to my husband John Carl Minsch, provided he survive distribution thereof to him, otherwise to my brother, namely, David F. Black, now residing at Santa Monica, California, provided he survive distribution thereof to him, but he failing to survive distribution, then the same shall go and be distributed to his wife, Elsie Black, provided she survive such distribution thereof to her, otherwise to my heirs at law living at the time of my death according to the laws of succession of the State of California then in force.

Of the three beneficiaries specifically named in the will, only Ms. Minsch's brother, David Black, was still living at the time of her death. Bonnie Colyer and Marjorie Hintze filed a petition for informal probate on March 4, 1991, and Letters Testamentary were issued on March 5, 1991, appointing Ms. Colyer and Ms. Hintze as co-personal representatives.[2] By the end of April 1991, the personal representatives had transferred the bulk of the estate into David Black's name,[3] reserving a portion of the assets for the payment of estate taxes and administration.

On June 1, 1991, before expiration of the period for presentation of creditors' claims, I.C. § 15-3-803, and before entry of an order of settlement of the estate, David Black died. In September 1991, after paying all taxes and other claims against the estate, the personal representatives of the Minsch estate petitioned for the court's approval of a final settlement and distribution by which the entire Minsch estate would be distributed to the estate of David Black. John Black, a nephew of the testatrix, and an heir at law who would share in the estate if the bequest to David Black failed, filed an objection to the proposed distribution. John Black argued that David Black had failed to survive distribution of the Minsch estate to him, and therefore, in accordance with the terms of the will, the estate should pass to Amy Minsch's surviving heirs under the intestate laws of California.

The magistrate ruled in favor of John Black, reasoning that "distribution" as that term was used in the will, required a final, court-approved distribution or settlement of the estate. The personal representatives appealed to the district court, asserting that "distribution" required only an actual disbursement of the estate assets to the legatee. The district court rejected this argument and affirmed the magistrate's decision.

## II.

■ When reviewing a decision of the district court acting in its appellate capacity, we consider the record before the magistrate independently of the district court's determination, while giving due consideration to the district court's conclusions. *Nicholls v. Blas-*

---

1. The personal representatives have asserted that the record does not reveal whether Amy Minsch resided in California when her will was executed or whether her will was drawn by an attorney. These facts appear on the face of the will itself.

2. Ms. Colyer and Ms. Hintze were the acting conservators of Ms. Minsch's estate prior to her death and were the co-personal representatives under the will of David F. Black, as well as his attorneys-in-fact.

3. Various sums were transferred to First Interstate Bank, at Boise, Idaho and to Boise branch offices of Merrill Lynch Co. and Shearson Lehman Bros. Co. According to interrogatory answers, David Black could not personally withdraw these funds; rather, the only persons who could withdraw the funds were Marjorie Hintze and Bonnie Colyer, as attorneys-in-fact for David Black. Respondent John Black disputes whether this distribution was real or merely *pro forma*. Because of our resolution of this case based upon the testatrix's intent in using the term "distribution," we are not required to address this issue.

*er,* 102 Idaho 559, 633 P.2d 1137 (1981); *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988).

■ We begin with the proposition that, when interpreting the terms of a will, the intent of the testatrix controls. I.C. § 15–2–603; *Dolan v. Johnson,* 95 Idaho 385, 388, 509 P.2d 1306, 1309 (1973); *Matter of Estate of Berriochoa,* 108 Idaho 474, 475, 700 P.2d 96, 97 (Ct.App.1985). If the language of the will is clear and unambiguous, this intent is derived from the will itself. However, if the meaning of a term is ambiguous, the court can look to extrinsic evidence to determine intent. *Id.* In the absence of extrinsic evidence of intent, the court may apply rules of construction to interpret the instrument. *Id.* One such rule is that where a term used in a will has a technical, legal meaning, it will be given that technical meaning unless it is inconsistent with the testator's intent as derived from the context of the will. *In re Estate of Julian,* 227 Ill.App.3d 369, 169 Ill. Dec. 552, 592 N.E.2d 39 (1991); *Zauner v. Brewer,* 220 Conn. 176, 596 A.2d 388 (1991). In other words, a testatrix is presumed to intend the legal effect of language used in a will, particularly if, as here, the will was drawn by a lawyer. 4 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON WILLS § 30.9 (rev. ed. 1961). Such rules of construction may only be used, however, when the intent of the testatrix is unclear. *Allen v. Shea,* 105 Idaho 31, 34, 665 P.2d 1041, 1044 (1983).

From the four corners of this will we are unable to discern the testatrix's intent, and no extrinsic evidence on this issue was presented to the magistrate. Therefore, to aid our determination of the testatrix's intent we will apply the rule of construction that a legal term in a will is to be given its technical legal meaning where no contrary intent appears.

The Idaho Supreme Court has interpreted a similar clause on only one prior occasion. In *Allen, supra,* the Supreme Court held that a clause creating a gift over to a contingent beneficiary if the primary beneficiary "dies prior to distribution of my estate," required that the primary beneficiary survive administration and closing of the estate. In that case, the primary beneficiary, the decedent's wife, was also the personal representative of the estate. She had marshalled the estate's assets but had not made any distribution to herself as a beneficiary or filed a closing statement or petition for final settlement and distribution prior to her own death four years after that of the testator. The Supreme Court interpreted the will to make vesting of the wife's interest contingent upon her survival until settlement of the estate following payment of all estate liabilities. *Id.* at 33, 665 P.2d at 1043.

■ We find the *Allen* decision persuasive in deriving the intent of the testatrix in this case. The word "distribution," when used in relation to decedent's estate, is a legal term which refers to a disposition pursuant to a decree of distribution or, if court approval is not required under the laws of the jurisdiction, a final disposition to beneficiaries of the net assets of the estate after satisfaction of estate liabilities. Our Supreme Court clearly so understood the term in rendering its decision in *Allen. See also Commissioner of Internal Revenue v. Beebe,* 67 F.2d 662, 664 (1st Cir.1933) ("to those familiar with probate proceedings 'distribution' has a distinct meaning . . . it may be defined as the division by order of a court having authority among those entitled thereto."); *State ex rel Dryden v. Thym,* 282 S.W.2d 178, 184 (Mo.App.1955) ("the term 'distribution' when applied to the estate of a deceased person refers to the ultimate division of the estate . . . among the beneficiaries under a will, after the estate is free from debt.").

We find it particularly significant that when this will was drafted by a California attorney in 1963, the law of that state ascribed this same technical meaning to the word "distribution." In a 1948 decision, *In re Hampe's Estate,* 85 Cal.App.2d 557, 193 P.2d 133, 135 (1948), the California court stated:

> The phrase "die prior to distribution" as used in a will providing that a legacy shall lapse if the legatee "dies prior to distribution" means that if the legatee is not alive on the date of entry of the decree of distribution the legacy lapses.

Similarly, in a 1953 decision the court observed:

> It is doubtful that there are in the law and practice of wills and probate administration terms that are more commonly used than 'distribution,' 'partial distribution' and 'distribution of the estate.' Anyone familiar with practices in probate would understand that 'distribution of my estate' means distribution in probate.... If it [the word "distribution"] have any legal technical meaning, it has such meaning with reference to decrees of distribution in probate courts.

*In re Rankin's Estate*, 118 Cal.App.2d 184, 257 P.2d 95, 97 (1953); *See also Matter of Estate of Newman*, 230 Cal.App.2d 158, 40 Cal.Rptr. 785, 790 (1964) ("[T]he word 'distribution' as used in the practice of wills, refers to distribution in probate and not to the actual physical distribution of the assets.").

■ In reviewing the will of Amy Minsch, we find no indication that she intended a meaning different from this legal definition when she used the term "distribution." Accordingly, we conclude that it was the testatrix's intent to create a gift contingent upon David Black's survival of a judicial order of distribution or, if the estate were to be closed informally without court order, a final disbursement by the personal representatives following payment of all estate taxes and liabilities.

■ In this case the transfers to David Black were made before the statutory period for the presentation of creditors' claims and before estate taxes had been paid. While these preliminary transfers to David Black were permissible, the assets were subject to recoupment by the personal representatives if required in order to satisfy estate liabilities. I.C. § 15–3–709. The transfers could not properly have been considered final when made, nor were they authorized by the court.

The personal representatives seek to distinguish Allen v. Shea by pointing out that in *Allen,* the clause at issue referred to "distribution of my estate" whereas here, the clause refers to "distribution thereof to him." This, they argue, differentiates between the distribution of an estate through judicial proceedings and simple delivery of the gift to the beneficiary. While this distinction in language is relevant to our inquiry in that we must discern the intent of the testatrix from the language of the will, the personal representatives' argument is unpersuasive. The subject sentence in Amy Minsch's will bequeaths "all of my estate" and provides that the gift over to David Black is contingent upon his surviving "distribution thereof to him." The word "thereof" can refer only to the term "my estate." Thus, appellants' distinction, upon close examination, evaporates.

■ The personal representatives further argue that a conclusion that David Black's gift did not vest in this case would be contrary to the public policy favoring prompt distribution of estates and penalizes David Black (or his estate) for the personal representatives' compliance with that policy. While we recognize that Idaho's informal probate laws encourage prompt and efficient settlement of estates, they do not evince a public policy of encouraging distribution before estate liabilities have been ascertained and paid. Moreover, the authority on which the personal representatives rely for this policy argument, *In re Estate of Taylor,* 66 Cal.2d 855, 59 Cal.Rptr. 437, 428 P.2d 301 (1967), involved unreasonable delay by the administratrix in distributing the estate, a factor clearly not present here.

Further, general public policy would not override the express intent of the testatrix that the bequest would fail if David Black should die prior to distribution. While we cannot divine Amy Minsch's reason for placing this contingency on the bequest, a likely purpose was to avoid the necessity of multiple probate proceedings and double estate taxation if David Black failed to survive closure of the Minsch estate. *See* Maxwell E. Foster, Jr., CALIFORNIA WILL DRAFTING §§ 11.46, 15.35 (California Continuing Education of the Bar, Reynard Press, Inc. 1965). The result advocated by the personal representatives would thwart such a purpose as well as contravene the express contingency clause.

■ It is also asserted by the personal representatives that if the gift to David Black fails, the effect will be to render Amy Minsch

intestate. This, they say, contravenes a rule of construction that when two interpretations of testamentary language are possible, only one of which will preserve testacy, the law favors the interpretation which will prevent total or partial intestacy. This argument is without merit. The will identifies contingent beneficiaries who will take if none of the specifically named beneficiaries survive distribution. The fact that Amy Minsch chose to define the class of such contingent beneficiaries as "my heirs at law ... according to the laws of succession of the State of California" does not convert this contingent bequest into intestacy.

 Next, the personal representatives suggest that even if David Black's interest in the entire estate did not vest, his interest should be deemed vested at least as to those sums transferred to him prior to his death. In support of this position they rely upon a Washington decision, *Estate of Carlson*, 40 Wash.App. 827, 700 P.2d 771 (1985). In that case, the will directed that a beneficiary, Nellie Carlson, would receive a share of the estate, but specified that if she should "die prior to distribution of my estate," her share should go to others. During the course of administration of the estate a "partial distribution" was made by the executor at the request of the beneficiaries. Nellie Carlson died after the partial disbursement but before the final closing of the estate. The question presented was whether the partial disbursement made during her life caused her interest in the remainder of the bequest to vest also. The Washington Court of Appeals ruled that such a preliminary disbursement did not vest in Nellie Carlson an interest in the undistributed portion of the estate, but the appellate court did not disturb the trial court's determination that Nellie Carlson's interest had vested in the assets she received *inter vivos*. Starting from the position that the use of the word "distribution" was ambiguous, the court reasoned that " 'distribution' is as distribution occurs." *Id.*, 700 P.2d at 774.

We find the decision in *Carlson* to be distinguishable from the present case. First, in *Carlson* neither party challenged on appeal the trial court's determination that the "partial distribution" had vested; thus that issue was not actually presented to the Washington Court of Appeals. Second, the Washington court gleaned the testator's intent as to the meaning of "die prior to distribution" from the context of that phrase in the will. By contrast, we find no helpful indicia of Amy Minsch's intent within the will itself. Therefore, unlike the Washington court, we must consult rules of construction to aid in interpreting the will, including the rule that legal terms will be given their technical meaning unless a contrary intent is expressed.

Finally, all parties to the appeal have requested that in the event this court affirms the magistrate's order, we should further define what shares will be taken by the contingent beneficiaries according to the intestate laws of California. The parties differ on their interpretation of applicable California law. We need not determine this issue, however, because that question was never presented to the magistrate. We will not address an issue which has not been first entertained by the trial court. *Johnson Equipment, Inc. v. Nielson*, 108 Idaho 867, 870, 702 P.2d 905, 908 (Ct.App.1985).

We affirm the orders of the district court and the magistrate, and remand this case for further proceedings before the magistrate regarding distribution of the estate. Costs to respondent.

WALTERS, C.J., and PERRY, J., concur.