**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 42822**

| | | |
|---|---|---|
| IN THE MATTER OF THE REVOCABLE FAMILY TRUST OF MICHAEL S. CORNELL AND ARLIE M. CORNELL. | ) ) ) ) | |
| -------------------------------------------------------- | ) | |
| THE ESTATE OF JOHN HENRY CORNELL, acting through its personal representative, KAREEN CORNELL, | ) ) ) ) | Boise, December 2015 Term |
| Petitioner-Appellant, | ) ) | 2016 Opinion No. 18 |
| v. | ) ) | Filed:  February 26, 2016 |
| TONI C. JOHNSON, | ) ) | Stephen W. Kenyon, Clerk |
| Respondent. | ) ) ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Clearwater County.  Hon. Michael James Griffin, District Judge, Hon. Randall W. Robinson, Magistrate Judge.

District court decision affirming magistrate's summary dismissal of administration of a trust, <u>reversed</u> and <u>remanded.</u>

Creason, Moore, Dokken & Geidl PLLC, Lewiston, for appellant.  Samuel T. Creason argued.

Jones, Brower & Callery, PLLC, Lewiston, for respondent.  Karin Seubert argued.

_____

BURDICK, Justice

This is an appeal from the Clearwater County district court's decision affirming the magistrate court's summary dismissal of the Estate of John Cornell's claims involving the administration of a trust. John and his sister, Toni Johnson, were beneficiaries of their parents' trust. When the time came to distribute the assets, Johnson apparently refused, which led John to file a petition for the administration of the trust and removal of Johnson as trustee. Shortly after filing the petition, John committed suicide. Consequently, the magistrate court granted Johnson's motion to dismiss John's petition. Kareen Cornell, John's surviving spouse, subsequently petitioned the magistrate court for administration of the trust and to remove Johnson as trustee.

1

The magistrate court once again granted Johnson's motion to dismiss, basing its decision on the trust distribution survivorship clause and on abatement of the claims. John's Estate appealed, and the district court affirmed. On appeal to this Court, the Estate argues that its claims survived John's death. We agree.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Michael S. Cornell and Arlie M. Cornell established a revocable family trust on November 1, 1996, naming their two children, Toni C. Johnson and John H. Cornell, as joint trustees and beneficiaries of the trust. The trust stated that "[o]n the death of the surviving Trustor, the Trust shall terminate and the Trustee shall, as soon as reasonably possible, divide the net income and principal remaining in the Trust into two (2) equal shares and distribute them to the following beneficiaries: Toni C. Johnson and John H. Cornell."

Arlie M. Cornell passed away on November 9, 2008. On August 6, 2009, Michael S. Cornell amended the trust to name Johnson as the sole trustee. Michael S. Cornell passed away on December 15, 2009.

Following his father's death, John contacted Johnson regarding the status of the trust but Johnson refused to speak to him. John wrote several letters and made several phone calls to the attorney for the Estate requesting information as to the status of the trust without any response. In the nearly three years from the last trustor's death to John's death, Johnson refused and failed to distribute any of the trust to John. During that time, Johnson lived rent-free in the home that was included in the trust and apparently paid all her living expenses with trust funds. At one point, John received $3,000 as the beneficiary of his father's life insurance policy, which Johnson demanded he turn over to her. Upon that demand, John sent a check for $2,500 to Johnson, retaining $500 for his own living expenses.

On July 11, 2012, John filed a petition for supervised administration and removal of trustee. In that petition, John alleged that Johnson breached her fiduciary duty as trustee of the trust by failing to provide an inventory of trust assets upon request, using trust assets for personal expenses, and for failing to distribute the trust assets within a reasonable time.

On August 20, 2012, John committed suicide. In the case of the death of one of the beneficiaries, the trust provided:

> If any child, for whom a share of the Trust Estate has been set aside, should die prior to the above distribution, then the Trustee shall distribute all of such deceased child's share of the Trust Estate to his or her surviving issue in equal

shares . . . If there is no surviving issue, then all of the deceased child's share of the Trust Estate shall be added to the shares set aside for the benefit of the Trustor's other living child . . . .

Although John's wife survived him, John left no issue.

Shortly after John's death, Johnson moved the court to dismiss John's pending petition for administration and removal of trustee. Johnson argued that John's claim was extinguished by his death and that by the trust's express terms, all net income and principal remaining in the trust Estate vested in Johnson when John died without issue. The magistrate court granted Johnson's motion to dismiss[1] on February 15, 2013, on the basis that John's claims did not survive his death under common law, state law, or the trust.

On February 26, 2013, Kareen Cornell, John's surviving spouse, in her personal capacity and as the personal representative of John's Estate, filed a petition for supervised administration and court ordered distribution. In that petition, the Estate alleged that Johnson breached her fiduciary duty by, among other things, failing to provide an accounting of trust assets, failing to distribute trust assets, and engaging in self-dealing.

On March 4, 2013, Johnson filed a second motion to dismiss on the basis that the Estate's claims abated. On June 21, 2013, the magistrate court dismissed the Estate's petition on the basis of abatement. The Estate appealed that decision to the district court, which remanded the case back to the magistrate court for further ruling on the request to remove Johnson as trustee. On remand, the magistrate court denied the request to remove Johnson as trustee and reaffirmed its prior dismissal on grounds of abatement. The Estate once again appealed to the district court, which affirmed. The Estate then timely appealed to this Court.

## II.    STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its appellate capacity, the standard of review is as follows:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

---

[1] The court converted the motion to dismiss into a motion for summary judgment because the parties filed, and the court considered, affidavits on the matter.

3

*Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, this Court does not review the magistrate court's decision directly. *Id.* at 859, 303 P.3d at 218. Instead, we are procedurally bound to affirm or reverse the district court's decision. *Id.* This Court exercises free review over questions of law. *In re Estate of Peterson*, 157 Idaho 827, 830, 340 P.3d 1143, 1146 (2014).

## III. ANALYSIS

The sole issue on appeal is whether John's claims survived his death. The Estate makes two main arguments in this regard. First, the Estate argues that John's claims fall under a common law exception to the rule of abatement. Second, the Estate argues that even if its claims abated, they fall under Idaho Code section 5-327(2) as an exception to abatement.

The Estate's petition alleged a breach of fiduciary duty claim, as well as claims for conversion, unjust enrichment, and constructive trust. The magistrate court concluded that all of the Estate's claims were in the nature of torts and consequently, they abated upon John's death. In so holding, the magistrate court relied on this Court's decision in *Bishop v. Owens*, 152 Idaho 616, 272 P.3d 1247 (2012).

In *Bishop*, this Court recognized that "[t]he abatement rule holds that in the absence of a legislative enactment addressing the survivability of a claim, the common law rules govern." 152 Idaho at 619, 272 P.3d at 1250. Under common law, claims arising out of contracts generally survive the claimant's death, while those sounding in pure tort abate. *Id.* The magistrate court in this case found the following excerpt from *Bishop* instructive for determining whether a case sounds in contract or tort:

> As this Court previously recognized, "[l]egal malpractice actions are an amalgam of tort and contract theories." *See Johnson v. Jones*, 103 Idaho 702, 706, 652 P.2d 650, 654 (1982). The tort basis of legal malpractice actions flows from the elements of legal malpractice: "(a) the existence of an attorney-client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damage to the client. . . . " *Id.* (quoting *Sherry v. Diercks*, 29 Wash. App. 433, 437, 628 P.2d 1336, 1338 (1981)). "The scope of an attorney's contractual duty to a client is defined by the purposes for which the attorney is retained." *Johnson*, 103 Idaho at 704, 652 P.2d at 652; *Fuller*, 119 Idaho at 425, 807 P.2d at 643 (holding that the tort of legal malpractice is also a breach of the attorney-client relationship). Breach of an attorney's duty in negligence is a tort. *See Harrigfeld v. Hancock*, 140 Idaho 134, 136, 90 P.3d 884, 886 (2004); *Johnson*, 103 Idaho at 704, 706–07, 652 P.2d at 652, 654–55. The contract basis of legal malpractice actions is the failure to perform obligations

directly specified in the written contract. *See Johnson*, 103 Idaho at 704, 706–07, 652 P.2d at 652, 654–55 (holding that a breach of contract claim would arise if the attorney did not do what he promised to do in the contract, e.g., failing to draw up a contract of sale). Thus, under the abatement rule, breach of duty is an action in tort, not contract; that is, unless an attorney foolhardily contracts with his client guaranteeing a specific outcome in the litigation or provides for a higher standard of care in the contract, he is held to the standard of care expected of an attorney. Breach of that duty is a tort.

*Id.* at 620, 272 P.3d at 1251. The magistrate court relied on the foregoing analysis to conclude that the claims, including the equitable claims, sounded in tort and were therefore abated.

We agree with the district court that the thrust of the Estate's claims were torts in that they focused on Johnson's alleged breach of fiduciary duty and the damages that allegedly resulted from that breach. *See Rockefeller v. Grabow*, 136 Idaho 637, 646, 39 P.3d 577, 586 (2001) ("Where the gravamen of the claim is for damages arising out of the breach of a fiduciary duty, an award of attorney fees is not proper under I.C. § 12-120(3) *because the action sounds in tort.*" (citing *Property Management West, Inc. v. Hunt*, 126 Idaho 897, 899–900, 894 P.2d 130, 132–33 (1995) (emphasis added))); *see also Profits Plus Capital Mgmt., LLC v. Podesta*, 156 Idaho 873, 892, 332 P.3d 785, 804 (2014) (recognizing that a breach of fiduciary duty is a tort claim); *Jones v. Runft, Leroy, Coffin & Matthews, Chartered*, 125 Idaho 607, 614, 873 P.2d 861, 868 (1994) ("A claim for a breach of a fiduciary duty is a negligence action in which the duty to act is created by the relationship between the parties.").

However, the common law rule that tort claims abate is not an absolute rule and is subject to exceptions. Claims alleging an injury that lessens the injured party's estate are one such exception. Recently, this Court explained:

Some cases have held that an injury suffered by fraud, false representations, or deceit, is of such personal nature, does not survive, and is not assignable. [ ] The later, and to me the better considered, cases have tended toward, and many of them have reached, the conclusion that the injuries of a personal nature which do not survive are such as injury to person, malicious prosecution, false imprisonment, libel, slander, and the like; and that an injury which lessens the estate of the injured party does survive, and thus is assignable.

*St. Luke's Magic Valley Reg'l Med. Ctr. v. Luciani*, 154 Idaho 37, 41, 293 P.3d 661, 665 (2013) (quoting *MacLeod v. Stelle*, 43 Idaho 64, 75, 249 P. 254, 257 (1926)). Thus, torts that are not purely personal, but rather lessen the injured party's estate, survive death. The survivability of claims that arise from injuries that affect property and property rights was explained in *American Jurisprudence* as follows:

At common law survivable actions are those in which the wrong complained of affects primarily property and property rights, and in which any injury to the person is incidental, while nonsurvivable actions are those in which the injury complained of is to the person and any effect on property or property rights is incidental. The reason for the common law rule was that the need to redress purely personal wrongs ceases to exist either when the person injured cannot be benefited by a recovery or when the person inflicting the injury cannot be punished, while, since the property or estate of the injured person passes to his or her personal representatives, a cause of action for injury done to the property or estate can achieve its purpose as well after the death of the owner as before. . . . The general rule is that, in addition to the causes of action arising out of contract recognized at common law, causes of action arising from torts to real and personal property survive and pass to the personal representative of the decedent, while purely personal torts do not survive in the absence of statutory provision.

1 Am. Jur. 2d *Abatement, Survival, and Revival* § 51.

The injury complained of in this case was not purely personal, but rather an injury that allegedly lessened John's estate. Indeed, John alleged a breach of fiduciary duty due to Johnson's delay in distributing the trust assets, which not only affected John personally, but also affected his estate by potentially diminishing it during his lifetime and at death. Johnson argues that John did not suffer an injury to property because he had no right to the trust assets unless he survived distribution. This Court has recognized that "[a] trust creates a fiduciary relationship in which the trustee is the holder of legal title to the property subject to the beneficial interest of the beneficiary." *DBSI/TRI V v. Bender*, 130 Idaho 796, 808, 948 P.2d 151, 163 (1997). Accordingly, a beneficiary has a property interest in the trust res that is enforceable either in law or in equity. *See generally, Restatement (2d) of Trusts*, §§ 198–99 (1959); *see also Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 388, 401, 111 P.3d 73, 86 (2005) *overruled on other grounds by Farber v. Idaho State Ins. Fund*, 152 Idaho 495, 272 P.3d 467 (2012) (implicitly recognizing that a trust creates property rights in its beneficiaries). As John had a property interest in the trust res, Johnson's alleged unreasonable delay in distributing the trust affected that property interest and potentially diminished his estate. Moreover, as discussed below, John's interest in the trust may have vested prior to his death.

The Estate argues that Johnson was required to distribute the trust assets within a reasonable time after the surviving parent's death. The Estate contends that Johnson unreasonably delayed in distributing the trust assets and urges this Court to adopt a rule where a beneficiary's interest vests upon a trustee's unreasonable delay in distributing a trust.

Although this Court has yet to address the precise issue, the California Supreme Court has confronted the issue. In *In re Estate of Taylor*, the testatrix died September 14, 1963, and her will provided that one-third of the residue of her estate should go to Ellen Glasky if she survived distribution of the estate. 428 P.2d 301, 302 (Cal. 1967). If Glasky predeceased distribution, her one-third share was to go in equal shares to two other individuals, one of whom was the executor of the estate. *Id.* The will was admitted to probate on November 26, 1963, and letters testamentary were issued to the executor on December 2, 1963. *Id.* However, the petition for final distribution was not filed until March 4, 1965, which requested that one-third of the residue of the estate be distributed to Glasky. *Id.* Hearing on the petition was set for March 29, 1965, but Glasky died on March 15, 1965. *Id.* The executor then filed another petition for final distribution requesting that the one-third share bequeathed to Glasky be distributed to him and the other contingent beneficiary. *Id.* The administratrix of Glasky's will objected to the petition, and the trial court sustained the objections to the petition and decreed that Glasky's interest vested in her before her death. *Id.* The court found that the estate could have been distributed in September of 1964 and should have been distributed before Glasky's death. *Id.* It subsequently ordered distribution of Glasky's share to the administratrix of Glasky's estate. *Id.*

On appeal, the California Supreme Court affirmed, noting that the evidence supported a finding of undue delay on the part of the executor. *Id.* The court recognized that to date, no California case had adopted the rule that vesting cannot be postponed by unreasonable delay in distributing an estate and that when there is such delay, contingent interests vest at the time distribution should have been made. *Id.* However, the court went on to adopt the rule and concluded that "unreasonable delay cannot defeat the beneficiary's interest." *Id.* at 303. The court reasoned that "this conclusion promotes the established policy favoring prompt distribution of estates and carries out the presumed intent of the testatrix," which absent any indication to the contrary, is prompt distribution. *Id.* (internal citations omitted).[2]

---

[2] The California Supreme Court's decision is in line with the rule followed in other states. For instance, in *Forman v. Brent*, 218 S.W.2d 655 (Ky. Ct. App. 1948), the Kentucky Court of Appeals construed a testator's will provision to mean that the beneficiaries' interests vested upon the testator's wife's death. The provision in the will stated that upon the death of the testator's wife, the property that was held in trust was to be sold and proceeds divided amongst the testator's four children or their descendants. *Id.* at 656. The testator's wife died in 1929, but the property was not sold until March 15, 1947. *Id.* The Kentucky Court of Appeals, based on the language of the will, held that the rights in the property or its proceeds became finally and irrevocably vested in the persons designated by the will—the testator's children and the descendants of any deceased children—on the date of the death of the testator's widow. *Id.* at 657. The court reasoned that "[b]y procrastination they could not defeat or impair the rights created by the will." *Id.* The court went on to state that "[e]quity considers done what should have been done, and the fact that a

This Court has cited *In re Estate of Taylor* with approval but has never been confronted with facts that suggested unreasonable delay in distribution and therefore did not have occasion to formally adopt the rule expressed above. *See Allen v. Shea*, 105 Idaho 31, 34–35, 665 P.2d 1041, 1044–45 (1983) (finding "substantial and competent evidence to support the magistrate's finding that [there was no unreasonable delay]"); *Hintze v. Black*, 125 Idaho 655, 659, 873 P.2d 909, 913 (Ct. App. 1994) ("[T]he authority on which the personal representatives rely for this policy argument, [*In re Estate of Taylor*] involved unreasonable delay by the administratrix in distributing the estate, a factor clearly not present here."). We now take occasion to formally adopt the rule expressed in *In re Estate of Taylor*: a beneficiary's interest will be deemed to vest where there was unreasonable delay in distribution. To be clear, this rule applies to situations where no time has been specified for distribution. Under such circumstances, distribution must be made within a reasonable amount of time. What constitutes a reasonable time is a question of fact for the trial court or jury to determine. If it is established that the trustee or personal representative unreasonably delayed distribution, the court will deem the beneficiary's interest to have vested at a time when reasonable distribution should have occurred. With these principles in mind, we turn to the facts of this case.

In this case, there was a trust provision stating that the trustee "shall, as soon as reasonably possible, divide the net income and principal remaining in the trust into two (2) equal shares and distribute them to the following beneficiaries: TONI C. JOHNSON and JOHN H. CORNELL." This Court has held that "unless contrary to settled principles of law, the intentions of a trust's settlors must control in actions involving the trust." *Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 873, 993 P.2d 1197, 1204 (1999). The trust reflects the settlors' intent to have distribution made "as soon as reasonably possible." However, the facts before this Court indicate that Johnson delayed for nearly three years to account for or distribute the trust assets, which appears to us to be unreasonable. However, whether Johnson unreasonably delayed distribution of the estate is ultimately a question of fact that must be determined on remand.

---

sale was not immediately effected cannot divest the beneficiaries of their interests which became absolute upon the death of the life tenant." *Id. See also In re Greene's Will*, 3 N.W.2d 704 (Wis. 1942) (holding that a beneficiary's right to receive a share of an estate was not divested by delay); *Biles v. Webb*, 161 N.E. 49 (Ohio 1928) (holding that a trustee who is also a beneficiary under a trust is charged with the duty of paying off mortgages on real property at the earliest possible date and distributing the estate to the beneficiaries, cannot defeat the right of the beneficiaries to their share of the estate by postponing distribution through failing to pay off the mortgages when there is sufficient income to do so).

Because the tort claims in this case alleged injuries that may have lessened John's Estate, we hold that they did not abate under common law. On remand, the trial court must determine not only whether waste has occurred, but also whether Johnson unreasonably delayed distribution of the trust assets. If the finder of fact concludes that Johnson unreasonably delayed, then as a matter of law, John's interest in the trust assets vested at a time when distribution should have occurred, assuming John survived through the time reasonably necessary to make distribution. Because we hold that the Estate's claims did not abate under the common law, we do not reach the Estate's second argument under Idaho Code section 5-327(2).

## IV.    CONCLUSION

We reverse the district court's decision affirming the magistrate court's grants of summary judgment in favor of Johnson. We remand to the district court for proceedings consistent with this opinion. Costs to the Estate.

Chief Justice J. JONES and Justices EISMANN, W. JONES and HORTON, **CONCUR.**