958 P.2d 606

## BALIVI CHEMICAL CORPORATION, an Idaho corporation, Plaintiff– Respondent,

v.

## INDUSTRIAL VENTILATION, INC., Defendant–Appellant.

No. 23301.

Court of Appeals of Idaho.

May 7, 1998.

Hepworth, Lezamiz & Hohnhorst, Boise, for appellant. John J. Janis argued.

Holland and Hart, Boise, Respondent. B. Newal Squyres argued.

Substitute Opinion. The Court's Prior Opinion Dated January 7, 1998 is Hereby Withdrawn.

SCHWARTZMAN, Judge.

Industrial Ventilation, Inc. ("IVI") appeals from the district court's summary judgment order entered in favor of Balivi Chemical Corporation ("Balivi"). The summary judgment order held that IVI's counterclaim for $396,311.52 was barred by the four-year statute of limitations for a claim under an oral contract.

## I. GENERAL FACTS AND PRO-CEDURAL BACKGROUND

Balivi Chemical Corporation and Industrial Ventilation Incorporated are two former sister corporations which at one time were owned by the same five individuals. In late 1992, the five owners sold their interests in IVI, but retained full control of Balivi.[1]

---

1. The sale of IVI by the joint owners of IVI and Balivi was not an instantaneous event, but rather involved a series of transactions which took place over the course of several months, from August of 1992 to January, 1993. This information is only important, however, in understand-

ing the relative position of the parties at the time of the underlying lawsuits and on appeal. All of the transactions at issue occurred *prior* to the severance of ownership of the two corporations, that is, they all took place prior to late 1992

Balivi is the licensed owner of a patent relating to a process of applying sprout-inhibiting chemicals to potatoes. IVI's business involves the application of the sprout-inhibiting chemical. Prior to the severance of ownership, Balivi supplied the chemical product and IVI would perform the actual application of the chemical to the potatoes. Balivi would then bill customers for all work done (i.e., the cost of the chemicals and their application). After receiving payment from customers, Balivi would then pay IVI for the service work it had performed. However, this system of accounting for monies between the two sister companies reversed in mid–1991 when the owners decided to have IVI bill the customers and then pay Balivi for the chemicals it supplied to IVI.

Balivi's claim against IVI was based upon a series of accounting mistakes beginning in late 1991 and continuing throughout 1992 regarding how Balivi's supplying of the chemicals was accounted for on both companies' books. Upon review of these books, Balivi determined that IVI owed it $202,556.31, and IVI's new president eventually signed an invoice acknowledging that IVI owed this amount and would make payments on a specified plan. IVI thereafter made four payments, leaving a balance of $122,566.31. Balivi was unable to recover the remaining balance and filed suit in October, 1994, seeking the unpaid amount of $122,566.31.[2]

On November 4, 1994, IVI filed its Answer and Counterclaim. Count II of the counterclaim asserted that Balivi had never paid IVI for certain sprout inhibiting work, and thus, as reflected in a December 31, 1989, invoice, Balivi owed IVI $396,311.52 plus interest. Balivi filed a motion for summary judgment on IVI's counterclaim. After a hearing on the motion, the district court granted Balivi's motion, ruling that the counterclaim was barred by the four-year statute of limitations applicable to oral contracts under I.C. § 5–217.

when Balivi's current owners also owned and operated IVI.

2. This claim is not at issue in this appeal.

3. IVI also appeals various other issues, but our reversal of the district court's summary judgment

IVI filed this appeal of, *inter alia*, the district court's decision barring IVI's counterclaim as time-barred.[3]

## II. STANDARD OF REVIEW

On appeal, we review a district court's ruling on motion for summary judgment by applying the same standard properly applied by the district court when originally ruling on the motion. *Farmers National Bank v. Shirey*, 126 Idaho 63, 878 P.2d 762 (1994). Summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When faced with an appeal from a summary judgment, this Court must determine whether pleadings, depositions, and admissions on file, together with affidavits, show there was no genuine issue as to any material fact, and that the moving party was entitled to judgment as a matter of law. *City of Sun Valley v. Sun Valley Co.*, 128 Idaho 219, 912 P.2d 106 (1996). We exercise free review in determining whether a genuine issue of material fact exists. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 727 P.2d 1279 (Ct.App.1986). However, if the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court also exercises free review. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 887 P.2d 29 (1994).

## III. DISCUSSION

**Did the district court err in ruling on summary judgment that IVI's counterclaim was barred by the statute of limitations?**

### A. Factual Context

IVI asserts that Balivi still owes it $396,311.52. This claim was first raised as a counterclaim in IVI's responsive pleading filed on November 4, 1994.[4]

order is determinative, mooting out all other issues.

4. The counterclaim in question was asserted by IVI as follows:

As stated above, when Balivi and IVI were jointly owned companies, Balivi would purchase the sprout inhibiting chemical and IVI would apply the chemicals. Balivi would then bill the customers and pay IVI for the application. On December 13, 1989, IVI issued Invoice No. 12409 to Balivi in the sum of $396,311.52 for application services rendered by IVI in 1989. During a three-month period from December of 1989 to March, 1990, Balivi made payments to IVI which *paid off* the entire amount owing from Invoice No. 12409.

Then, on March 30, 1990, a Board of Directors meeting was held. This board consisted of the five people who, at the time, owned both Balivi and IVI. Mr. Alan Conilogue, corporate counsel for both companies, was also in attendance. At this meeting the owners determined that for tax reasons, the $396,311.52 income from Invoice No. 12409 should not be reflected as income for IVI in the 1989 tax year. The owners instructed Mr. Conilogue to basically *unbill* Invoice No. 12409. This was carried out on the same day by the issuance of an IVI invoice in the form of a *credit memo* to Balivi. Invoice No. 12982 states: "CREDIT MEMO Credit on Inv # 12409. Customer was billed incorrectly [sic] will be rebilled," and lists the amount as: "$396,311.52."

Accordingly, the purported agreement reached between the joint owners at the March 30, 1990, meeting was that: (1) payment would not be made to IVI at that time, (2) IVI would return the $396,311.52 to Balivi, and (3) at some later undetermined date, Balivi would be rebilled and would repay IVI the $396,311.52.

After the credit memo was entered on March 30, 1990, as IVI provided services to Balivi's customers, instead of Balivi paying for those services, credit was given by IVI to Balivi against the credit memo amount of $396,311.52; that is, instead of paying out of pocket for the services IVI performed, Balivi simply received a credit on its books against the IVI account. By November, 1990, the balance was reduced to zero. Thus, Invoice No. 12409 was not fully unbilled until November of 1990 when IVI recredited back to Balivi the entire sum it had previously paid.

In its November 4, 1994, answer and counterclaim, IVI alleged that Balivi had never repaid the $396,311.52. Balivi filed a motion for summary judgment, contending this counterclaim was barred by the statute of limitations. The district court agreed, holding that the statute of limitations began running, at the latest, on December 13, 1989, and thus expired on December 13, 1993. The district court's reasoning was that since the underlying contract (i.e., the arrangement that IVI would provide the services and then Balivi would pay IVI) was oral, I.C. § 5–217 applies, and the claim was therefore barred.[5]

## B.  Analysis

It is axiomatic that a statute of limitations does not begin to run until the cause of action accrues. *Spence v. Howell*, 126 Idaho 763, 770, 890 P.2d 714, 721 (1995) ("The statute of limitations does not begin to run until a claim accrues upon the breach of the contract."); *Mason v. Tucker & Associates*, 125 Idaho 429, 436, 871 P.2d 846, 853 (Ct. App.1994) ("A cause of action for breach of contract accrues upon the breach."); *Galbraith v. Vangas, Inc.*, 103 Idaho 912, 915, 655 P.2d 119, 122 (Ct.App.1982) ("The cause

---

12. During the years of 1989 and 1990, as well as others, Industrial Ventilation, Inc. applied sprout inhibitor for Balivi Chemical Corporation and was to be paid as described above. Industrial Ventilation, Inc. billed Balivi Chemical Corporation on December 13, 1989, for inhibiting done, in the amount of $396,311.52. Industrial Ventilation, Inc. Invoice number 12409 reflecting this billing as attached hereto as exhibit 1. This invoice was later determined to be prematurely sent, so a credit memo was issued against it, a copy of which is attached as exhibit 2.

13. Balivi Chemical Corporation never paid Industrial Ventilation, Inc. for the sprout inhibiting work done as reflected in invoice number 12409. The amount of $396,311.52 plus interest at the statutory rate pursuant to I.C. § 28–22–104 from December 31, 1989 is due and owing by Balivi Chemical Corporation to Industrial Ventilation, Inc.

5. I.C. § 5–217 provides a four-year statute of repose for: "An action upon a contract, obligation or liability not founded upon an instrument of writing."

of action accrues, and the statute of limitations begins to run, when a party may sue another.").

As previously noted, Balivi had paid the bill for Invoice No. 12409 ($396,311.52) in full by March 30, 1990. Then, by November of 1990, IVI had returned the full $396,311.52 to Balivi in the form of credit memos, with the understanding that IVI would later *rebill* Balivi for the entire amount.

Balivi claims that under Idaho law, when analyzing an action for goods delivered or services rendered, the four-year statute of limitations begins to run on the date of the last delivery or performance of services. *Mitchell v. Flandro,* 95 Idaho 228, 234, 506 P.2d 455 (1972) (claim based on oral contract for work performed must be brought within four years from the date the last work is performed or the claim is barred by I.C. § 5–217). IVI, on the other hand, argues it was the March rebilling agreement that was breached, and that suit could not have been brought until after Balivi was rebilled.

In other words, Balivi views the oral contract being sued upon as the agreement between the parties that during 1989 Balivi would pay IVI for services rendered. The district court also viewed the claim in this fashion. However, IVI sees the contract being sued upon as the agreement formed at the March 30, 1990, meeting; i.e., that IVI would be returning the $396,311.52 to Balivi and that Balivi would repay this amount to IVI at a later point in time. The importance of this distinction cannot be overemphasized, because the resolution of the statute of limitations issue hinges on which view is adopted.

The critical question is: When did IVI's cause of action accrue? Based upon our review of the record, we cannot agree with the district court's conclusion that the cause

of action accrued on December 13, 1989, because the invoice was fully paid off by March 30, 1990. It was then agreed that the transaction would be reversed. However, it took IVI and Balivi until November of 1990 to complete the unbilling of the transaction. Thus, the contract could not be breached until IVI had rebilled Balivi, and Balivi could not have been rebilled for the full amount until IVI had first returned the entire $396,-311.52.

We conclude as a matter of law that the earliest possible date IVI could have made claim against Balivi for $396,311.52 would have been at some point *after* the date in November of 1990 when reversal of the prior payments had been completed in accordance with the credit memo.[6] It would have been theoretically inconsistent for IVI to file a lawsuit against Balivi for that amount until after the transaction had been completely unbilled; logically, there is no other alternative. It is undisputed that IVI never rebilled Balivi,[7] and in such a situation the law would presume a reasonable time to take such action. *See, e.g., Ujdur v. Thompson,* 126 Idaho 6, 9, 878 P.2d 180, 183 (Ct.App.1994) ("It is well settled that where no time for performance is established in the agreement, the law implies that performance must occur within a reasonable time.").

However, we need not determine with exactitude the date on which the four-year statute of limitations began to run, because we hold that the agreement could not have been breached until sometime *after* November 4, 1990; consequently, IVI's cause of action could not have accrued until after that date.

The district court's ruling on Balivi's summary judgment motion was in error. IVI's counterclaim should not have been dismissed

**6.** From the record provided it is not clear on what date in November of 1990 that IVI finally finished returning the entire $396,311.52 to Balivi through the credit memo process. When questioned at oral argument, IVI's counsel stated that it believed the amount was fully returned to Balivi by November 29, 1990; Balivi's counsel did not dispute this assertion. Upon review of

the exhibits, we note that it appears the date may have been either November 13 or 16.

**7.** Since both companies were managed by the same set of interlocking owners, there was probably little motivation for one corporation to make a claim against the other, except for tax purposes.

on the basis that it was time-barred by the statute of limitations, I.C. § 5–217. The summary judgment order is reversed, and we remand for further proceedings consistent with this opinion.[8]

Costs on appeal are awarded to IVI.

PERRY, J., concurs.

LANSING, C.J., concurs in the result.

---

8. This opinion in no way precludes Balivi, on remand, from litigating the issue of whether or not the credit memo, when viewed in the context of all surrounding circumstances, constitutes an enforceable agreement between Balivi and IVI. Given the procedural posture of this case on summary judgment, our opinion should not be read as amounting to a finding that constrains the district court from making any determinations about the existence, terms, intent or effect of any purported agreement between the parties relative to the credit memo.