# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45552

BENNETT G. DAY, as Trustee of TRUST B )
OF THE DONALD M. DAY AND )
MARJORIE D. DAY FAMILY TRUST; ) Boise, December 2018 Term
JOHN F. DAY; DAN E. DAY; HOLCOMB )
ROAD HOLDINGS, LLC, an Idaho limited ) Opinion filed: February 14, 2020
liability company; DONNA DAY JACOBS; )
and DAVID R. DAY, ) Karel A. Lehrman, Clerk
)
      Plaintiffs-Appellants, )
)
v. )
)
STATE OF IDAHO, TRANSPORTATION )
DEPARTMENT, )
)
      Defendant-Respondent. )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County  Samuel Hoagland, District Judge.

The judgment of the district court is <u>affirmed in part, vacated in part and remanded for further proceedings consistent with this opinion</u>.

Greener, Burke, Shoemaker, P.A., Boise, for Appellants.  Fredric V. Shoemaker argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent.  Chris Kronberg argued.

_____

HORTON, Justice.

Bennett G. Day, Trustee of Trust B of the Donald M. Day and Marjorie D. Day Family Trust, John Day, Dan E. Day, Holcomb Road Holdings, LLC, Donna Day Jacobs, and David R. Day (collectively, the Day family) appeal from the district court's decision dismissing their claims against the State of Idaho and the Idaho Transportation Department (the Department). We affirm the district court's judgment in part, vacate in part, and remand this action for further proceedings consistent with this opinion.

# I. FACTUAL AND PROCEDURAL BACKGROUND

This case relates to certain property owned by the Day family near Isaacs Canyon in Ada County. In 1935, Ernest George Day and Emma N. Day purchased a quarter section, less the right-of-way for the then-existing Highway 30. Following Ernest George Day's death in 1953, this property was held in the name of Emma N. Day and her three sons, Donald M. Day, Robert L. Day, and Ernest E. Day. In 1975, Donald M. Day purchased an adjoining quarter section. Following Emma N. Day's death in 1989, the first quarter section was divided equally between the three sons and Donald M. Day agreed to split the quarter section that he had acquired into three equal shares with his brothers. In 1992, Ernest E. Day transferred his one-third interest in the property to the Ernest and Lois Day Living Trust. In 1994, Donald M. Day conveyed his one-third interest in the property to a trust which immediately thereafter transferred the interest in equal parts to his children, Bennett G. Day, David R. Day, and Donna Day Jacobs.

On July 15, 1998, Robert L. Day's one-third interest was conveyed equally to the Ernest and Lois Day Living Trust and the Donald M. Day and Marjorie Day Family Trust. On December 29, 1998, the Ernest and Lois Day Living Trust transferred its interest in the property to Ernest and Lois Day's two sons, Dan E. Day and John F. Day. In 2005, Edmonds Groves Land Holdings Inc. purchased the Day family property. The purchase price was secured by a mortgage. As a result of the Great Recession, approximately three years later, ownership of the property was transferred back to the sellers following the purchaser's default.

In 2013, Bennett G. Day transferred a one-eighth interest in the Donald M. Day and Marjorie Day Family Trust to Holcomb Road Holdings, LLC, a company wholly owned by Bennett G. Day. Thus, at the time this litigation began, title to the property was vested in Trust B of the Donald M. Day and Marjorie D. Day Family Trust (one-ninth interest), John F. Day (one-quarter interest), Dan E. Day (one-quarter interest), Donna Day Jacobs (one-ninth interest), David R. Day (one-ninth interest) and Holcomb Road Holdings, LLC (one-sixth interest).

When Ernest George Day and Emma N. Day purchased the first quarter section in 1935, the parcel was bisected by Highway 30, and the Days had direct access to the Highway. In 1961, the parcel's access to the public highways was dramatically affected when the state highway was converted to a controlled-access federal interstate highway, I-80N.

On November 17, 1961, Emma N. Day and her three sons entered into a preliminary agreement with the Department[1] that allowed the Department to take possession of nine acres of their property for construction of the interstate. On October 23, 1967, the Department entered into a Right of Way Contract (the 1967 Contract) with Emma Day, Don Day, Bob Day, and Ernest Day for the transfer of 8.99 acres of the property in return for a lump sum payment and the promise that: "Access to Grantors['] remaining property southerly of the Interstate Highway will be available from the future frontage road and stock drive on the southwesterly side of I-80N." A map was appended to the 1967 Contract which depicted the location of the future frontage road. In accordance with the 1967 Contract, the Days conveyed the right of way by warranty deed which referenced the future frontage road.

In the 1990s, the State began working on the Isaacs Canyon Interchange near the Day property. The frontage road (Eisenman Road) was extended to the interchange. Eisenman Road does not reach the Day property. On December 5, 1997—which the parties each stipulated was the date for valuation of any taking—the Department substantially completed construction of the Isaacs Canyon Interchange project. After the interchange was completed, the State transferred jurisdiction and maintenance of Eisenman Road southwest of the Interchange to the Ada County Highway District (ACHD). From 1996 to 2001, the Department worked with the Day family in an effort to establish highway access to the Day property pursuant to the future frontage road obligation of the 1967 Contract. In response to the Day family's concerns regarding the Department's ability to provide highway access, on July 19, 2000, the Department's attorney wrote to the Days: "I will also represent to you that the Department will not assert any type of statute of limitations defense if an agreement on new access cannot be reached."

In February 2014, the Department applied to ACHD to obtain access from Eisenman Road to the Day property. In 2015, the Department offered the Day family $560,000 to build an access road themselves, but the Days rejected the offer. In May 2016, ACHD advised the Department that it would "not accept a public street" needed to create the access desired by the Day family. (emphasis original).

Following ACHD's denial of the Department's application, the Day family filed this action, asserting claims against the Department for inverse condemnation, breach of contract,

---

[1] At the time of this agreement, the Idaho Department of Highways (the Department's predecessor) acted for the State of Idaho in these matters.

and breach of the implied covenant of good faith and fair dealing. Both parties moved for partial summary judgment and the Department moved to dismiss the Day family's complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6). The district court received argument on the parties' cross-motions for partial summary judgment on June 14, 2017. The district court subsequently heard argument on the parties' various motions on August 14, 2017. On October 11, 2017, the district court issued a written decision granting summary judgment in favor of the Department and dismissing the Day family's claims. The Day family timely appealed.

## I. STANDARD OF REVIEW

When reviewing an order granting summary judgment, this Court applies the same standard used by the court in ruling upon the motion. *Morgan v. New Sweden Irrigation Dist.*, 156 Idaho 247, 253, 322 P.3d 980, 986 (2014). Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied." *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991).

## II. ANALYSIS

This appeal presents the Court with three issues: (1) whether the district court erred by considering the Department's motion to dismiss without notifying the Day family that it would consider matters outside of the pleadings; (2) whether the district court correctly dismissed the Day family's claims for lack of standing and for untimeliness; and (3) whether either party is entitled to an award of attorney fees on appeal.

### A. The district court was not required to provide the Day family with additional notice before considering the Department's motion to dismiss as a motion for summary judgment.

The Day family argues that the district court erred by not providing them notice of its intention to consider the Department's Rule 12(b)(6) motion under the summary judgment standard. The Day family contends that they would have presented additional evidence if the district court had provided them with such notice.

Idaho Rule of Civil Procedure 12(d) provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

4

Thus, pursuant to this Rule, a trial court must typically provide notice to the parties when it intends to treat a 12(b)(6) motion as a motion for summary judgment. However, this requirement has not been applied where the party "had reason to know the court would look outside of the pleadings [because that party] asked the court to do so by referencing additional materials." *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 159 Idaho 813, 824, 367 P.3d 208, 219 (2016). That is the case here.

While the Day family complains about lack of notice, they had asked the district court to review matters outside of the pleadings in connection with their partial motions for summary judgment. ("This Motion is supported by a Memorandum and an Affidavit of Donna Jacobs, filed concurrently herewith."**.)** Because the Day family had asked the district court to review matters outside of the pleadings, they were on notice that the district court would look outside of the pleadings. As such, the district court did not err by failing to provide additional notice to the Day family that it would consider the Department's motion to dismiss under the summary judgment standard.

**B. The district court erred in granting summary judgment for the Department on all of the Day family's inverse condemnation claims and erred by granting summary judgment on the contract claims.**

Before the district court, the Day family asserted an inverse condemnation claim, a breach of contract claim, and a breach of the implied covenant of good faith and fair dealing claim. The district court dismissed the Day family's inverse condemnation claim on the basis that all but two of the Day family plaintiffs lacked standing to bring the claims and that all plaintiffs' claims were untimely. As to the contract claims, the district court dismissed the claims for lack of standing after finding that none of the Day family were party to the original contract and there was no evidence of an assignment. The district court further held that even if the Day family members had standing, the contract claims were also untimely. The district court's decisions regarding the inverse condemnation claim and the contract claims will be addressed in turn.

**1. The district court correctly found that only Donna Day Jacobs and David R. Day have standing to pursue the inverse condemnation claim.**

The district court found that only Donna Day Jacobs and David R. Day were owners of the property at the time of the taking and therefore only they had the necessary standing for this

5

action. The remaining Day family plaintiffs argue that because the obligations run with the land, all of the current property owners have the requisite standing for this action.

In all but the most extraordinary circumstances,[2] standing is an absolute requirement for any action:

> Standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated. To satisfy the case or controversy requirement of standing, a litigant must allege or demonstrate an injury in fact and a substantial likelihood the relief requested will prevent or redress the claimed injury. This requires a showing of a distinct palpable injury and fairly traceable causal connection between the claimed injury and the challenged conduct.

*Martin v. Camas Cnty. ex rel. Bd. Comm'rs*, 150 Idaho 508, 513, 248 P.3d 1243, 1248 (2011) (footnote omitted) (quoting *Young v. City of Ketchum*, 137 Idaho 102, 104–05, 44 P.3d 1157, 1159–60 (2002)). While this Court has not explicitly addressed the standing requirements for an inverse condemnation action, the district court determined, pursuant to precedent of the Supreme Court of the United States and other persuasive authority, only property owners at the time of the taking have the necessary interest to establish standing to pursue an action for inverse condemnation.

We conclude that the district court correctly ruled that only property owners at the time of the taking have standing to pursue an inverse condemnation claim. Along with precedent from the Supreme Court of the United States,[3] we find that existing precedent from this Court implicitly establishes this requirement. A proper inverse condemnation claim must be: "(1) instituted by a property owner who (2) asserts that his property, or some interest therein, has been invaded or appropriated (3) to the extent of a taking, (4) but without due process of law, and (5) without payment of just compensation." *Covington v. Jefferson Cnty.*, 137 Idaho 777, 780, 53 P.3d 828, 831 (2002). The first two elements articulated in *Covington* suggest that a property owner that obtains an interest in the property subsequent to a taking cannot meet this burden. Accordingly, we hold that the district court correctly limited standing to owners of the property at the time of the taking.

---

[2] *See Westover v. Idaho Cntys. Risk Mgmt. Program*, 164 Idaho 385, 430 P.3d 1284 (2018). "Because the Idaho Constitution does not contain a strict case or controversy requirement—unlike the federal Constitution—the justiciability requirement is a 'self-imposed constraint' that may be relaxed in rare cases to guarantee 'important constitutional provisions.' " *Id.* at 389, 430 P.3d at 1288 (citing *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015).

[3] "For the reason that compensation is due at the time of taking, the owner at that time, not the owner at an earlier or later date, receives the payment." *Danforth v. United States*, 308 U.S. 271, 284 (1939).

This begs the following question: When did the taking in this case occur? The district court's opinion states that "the parties stipulated that the taking occurred on December 5, 1997, when the Isaacs Canyon Interchange project was substantially completed." In this appeal, the Day family vigorously disputes this statement, contending that they stipulated that valuation of any taking should be measured as of that date, but that accrual of their cause of action occurred subsequently. The Day family contends that their cause of action accrued when they were notified of ACHD's refusal to permit a public street to be connected from their property to Eisenman Road and that until that time, the Isaac's Canyon Interchange was merely a temporary interruption of their right of access to a public highway.

In support of this contention, the Day family relies on the Court of Appeals' decision in *Balivi Chemical Corporation v. Industrial Ventilation, Inc.*, 131 Idaho 449, 958 P.2d 606 (Ct. App. 1998). We are not persuaded by this argument. Without exploring the facts of the *Balivi* decision in length, we simply note that a case involving breach of a subsequent or substitute contract is inapposite to a claim of inverse condemnation.

We hold that the district court properly concluded that the date of the accrual of the cause of action was December 5, 1997, when the Isaacs Canyon Interchange was substantially completed. We note that the Day family moved for partial summary judgment, asserting that the taking occurred at the completion of the Isaacs Canyon Interchange. This request was consistent with their Complaint, which alleged that the failure to provide highway access upon completion of the project constituted a taking. The district court's conclusion is consistent with this State's "project completion" rule, which provides that a property owner may wait until completion of a project before the inverse condemnation claim accrues for purposes of the statute of limitations. *C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 144, 75 P.3d 194, 198 (2003).

The Day family also contends that the district court erred by failing to find that their inverse condemnation claims were based upon rights transferred in the various deeds conveying the Day property which all contained language transferring "hereditaments" or "appurtenances" which are real property rights, rather than personal property rights.

The district court's decision explains that an inverse condemnation claim is personal property, rather than real property as defined by Idaho Code section 73-114(2). That statute defines personal property as "money, goods, chattels, things in action, evidence of debt and general intangibles as defined in the uniform commercial code—secured transactions." I.C. § 73-

7

114(2)(c). Real property is defined as "coextensive with lands, tenements and hereditaments, possessory rights and claims." I.C. § 73-114(2)(e). A "thing in action" or "chose in action" is defined as: "The right to bring an action to recover a debt, money, or thing." *Chose*, BLACK'S LAW DICTIONARY (10th ed. 2014). In light of the standing requirements explored above, the district court's decision correctly classified the inverse condemnation claim as personal property. Although the claim obviously arises from ownership of real property, the claim belongs to the owner of the property at the time of the taking rather than running with the land. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 639 (2001) ("Most importantly for our purposes today, it is the person who owned the property at the time of the taking that is entitled to the recovery. The rationale behind that rule is true whether the transfer of ownership is the result of an arm's-length negotiation, an inheritance, or the dissolution of a bankrupt debtor.") (Stevens, J., concurring in part and dissenting in part) (internal quotation and citation omitted). *See also Danforth v. United States*, 308 U.S. 271, 284 (1939).

Applying these principles to the instant case, the district court correctly found that only Donna Day Jacobs and David R. Day had standing to pursue the inverse condemnation claim. As previously discussed, the district court properly found that the taking occurred in 1997 upon the completion of the Isaacs Canyon Interchange. At this time, the property was owned by Ben Day, Donna Day Jacobs, David R. Day, Bob Day, and the Ernest and Lois Day Living Trust. Only Donna Day Jacobs and David R. Day joined as plaintiffs in the action before the district court. The district court correctly determined that the other owners at the time of the taking had not assigned their causes of action. As such, the district court correctly held that only Donna Day Jacobs and David R. Day had standing to pursue the inverse condemnation claim. Therefore, the district court correctly dismissed the remaining plaintiffs' claims.

### 2. The district court incorrectly held that the statute of limitations bars the inverse condemnation claims of Donna Day Jacobs and David R. Day.

The district court's decision also granted summary judgment to the Department on the ground that the Day family's inverse condemnation claims were untimely. The Day family argues that the district court incorrectly applied the date of accrual and that the Department waived any statute of limitations defense.

An inverse condemnation action must be commenced within four years of the date of accrual. *Harris v. State, ex rel. Kempthorne*, 147 Idaho 401, 405, 210 P.3d 86, 90 (2009) (citing I.C. § 5-224). As previously discussed, the district court correctly held that the cause of action

8

accrued in 1997. However, we conclude that the district court erred in its analysis of the effect of the Department's lawyer's promise not to advance a defense based upon the statute of limitations.

As previously noted, on July 19, 2000, the Department's counsel sent a letter to the Day family which stated: "I will also represent to you that the Department will not assert any type of statute of limitations defense if an agreement on new access cannot be reached." The district court held that the letter extended the statute of limitations for one additional period pursuant to Idaho Code section 5-328. Even with this extension, the district court found that the Day family's claims were untimely and therefore barred. Although the Day family argued to the district court that the letter provided grounds for defending against application of the statute of limitations based upon equitable estoppel and waiver, the district court did not find these arguments persuasive.

The district court's interpretation of counsel's letter was erroneous. First, although the district court determined that Idaho Code section 5-328 applied to the letter, this statute does not apply to a promise of the type contained in the letter. The statute provides:

> No acknowledgment or promise is sufficient evidence of a new or continuing contract by which to take the case out of the operation of this chapter, unless the same is contained in some writing, signed by the party to be charged thereby; but any payment of principal or interest is equivalent to a new promise in writing, duly signed, to pay the residue of the debt.

I.C. § 5-238. Prior cases make clear that the word "promise" in the context of this statute means a "promise to pay." *Collection Bureau, Inc. v. Dorsey*, 150 Idaho 695, 699, 249 P.3d 1150, 1154 (2011). Review of the letter show that it is not an acknowledgement or promise to pay; instead, it is an unconditional promise by the Department's lawyer that the defense would not be utilized.[4] As such, the district court erred in holding that the letter simply extended the statute of limitations for one additional period.

The district court addressed the Day family's arguments regarding equitable estoppel and waiver in the same section of its decision. The district court began its analysis by quoting our decision in *J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 126 Idaho 532, 534, 887 P.2d 1039, 1041 (1994), where we stated that "[t]he only non-statutory bar to a statute of limitations defense in

---

[4] An internal memorandum, drafted by the same attorney roughly one month earlier, recognized that the Day family can "file suit based upon a taking of access (inverse condemnation) and [the Department's] breach of its covenant in the original deed." The letter promising not to raise a statute of limitations defense was manifestly an effort to avoid such litigation.

9

Idaho is the doctrine of equitable estoppel." The district court's statement is an accurate description of existing law. Indeed, we have repeated this statement on three occasions subsequent to *Simplot*. *See City of McCall v. Buxton*, 146 Idaho 656, 663, 201 P.3d 629, 636 (2009); *Winn v. Campbell*, 145 Idaho 727, 732, 184 P.3d 852, 857 (2008); and *Ferro v. Society of Saint Pius X*, 143 Idaho 538, 540, 149 P.3d 813, 815 (2006).

The present case has caused us to reconsider this statement. The statement found in *Simplot* was followed by a citation to *Theriault v. A.H. Robins Co.*, 108 Idaho 303, 307, 698 P.2d 365, 369 (1985). However, our decision in *Theriault* did not identify equitable estoppel as the exclusive non-statutory bar to a statute of limitations defense and our decision in *Simplot* did not explain why equitable estoppel should be a singular bar to a statute of limitations defense. As we can discern no basis for holding that other equitable doctrines may not be interposed to such a defense, we disavow the broad statement in *Simplot* and hold that waiver may constitute a bar to a statute of limitations defense.

Although the district court acknowledged our statement in *Simplot*, it addressed the Day family's waiver defense in the context of an equitable estoppel analysis. We hold that the district court erred when it determined that counsel's[5] letter did not waive the Department's ability to rely upon the statute of limitations as a defense to subsequent litigation.

> Waiver is a voluntary, intentional relinquishment of a known right or advantage. It is a voluntary act and implies election by a party to dispense with something of value or to forego some right or advantage which he might at his option have demanded and insisted upon. A party asserting waiver must have acted in reliance upon the waiver and altered the party's position.

*Stoddard v. Hagadone Corp.*, 147 Idaho 186, 191, 207 P.3d 162, 167 (2009) (internal citations omitted). The Department's promise was explicitly a voluntary relinquishment of a known right to present a defense based upon the statute of limitations. The letter was drafted in response to ongoing problems with fulfilling the Department's future frontage road obligation and was drafted by the Department's own attorney.

Although the district court found that the Day family did not detrimentally rely on the waiver, the record demonstrates a genuine issue of material fact on this issue. The record shows that the parties continued to engage in negotiations for years after the project was substantially completed in an effort to provide highway access to the Day property. The district court reasoned

---

[5] It is axiomatic that an attorney's representations in a civil action are binding on the client. See, e.g., *Sato v. Schossberger*, 117 Idaho 771, 776, 792 P.2d 336, 341 (1990).

that the Day family had not relied on the Department's promise to their detriment because "five years after [the Department's] promise, the Days sold the Day Property for over $10 million" and ultimately retained $4.9 million of the purchase price. The selling price of the property or the amount realized from the failed transaction is simply not relevant to the Day family's right to pursue an inverse condemnation claim. In holding that there was no reliance, the district court failed to provide the Day family the benefit of "all reasonable inferences which can be made from the record . . . ." *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991). As such, the district court erred by granting summary judgment for the Department on Donna Day Jacobs' and David R. Day's claims for inverse condemnation. In light of this conclusion, we do not address the Day family's other claims that the district court erred by applying the statute of limitations to the inverse condemnation claim.

For guidance on remand, we turn to the duration of the waiver's effectiveness. After reviewing the relatively scant body of state and federal decisions addressing this issue, we adopt the view that a perpetual or indefinite waiver of the statute of limitations would be void as against public policy. Instead, we hold that the waiver is valid only for a reasonable time, which is a question of fact. *See e.g., Estate of Cornell v. Johnson*, 159 Idaho 778, 781, 367 P.3d 173, 179 (2016). We decline to adopt the Department's suggestion that a reasonable time is defined by the applicable statute of limitations; instead, the district court, sitting as trier of fact on the inverse condemnation claim,[6] must evaluate the entirety of the parties' course of dealing when determining whether the action was timely filed.

**3. The district court erred by dismissing the Day family's contract-based claims.**

Before the district court, the Day family asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing. On appeal, the Day family argues that the district court failed to recognize that the contractual obligations ran with the land. We agree.

The district court rejected the Day family's contract claims on the basis of standing, noting that "[n]one of the plaintiffs were party to the [1967 Contract]. and that there was no evidence that Emma Day or her sons assigned the 1967 Contract to the Day family." Further, the district court found that even if the Day family had standing, their claims were untimely.

---

[6] In an inverse condemnation action, all issues, save for that of just compensation, are decided by the trial court. *Rueth v. State*, 100 Idaho 203, 222, 596 P.2d 75, 94 (1978).

11

The district court did not address the Day family's claim that the warranty deed executed pursuant to the 1967 Contract gave rise to their contract claim. By failing to do so, the district court erred.

In *Jolley v. Idaho Securities, Inc.*, 90 Idaho 373, 414 P.2d 879 (1966), we explained the merger doctrine as it applies to a real estate purchase agreement and deed:

> [T]he acceptance of a deed to premises generally is considered as a merger of the agreements of an antecedent contract into the terms of the deed, and any claim for relief must be based on the covenants or agreements contained in the deed, not the covenants or agreements as contained in the prior agreement.

*Id.* at 382, 414 P.2d at 884. In this case, consistent with the 1967 Contract, the warranty deed transferring the land for the construction of I-80N expressly reserved for the benefit of the grantors "access to the Future Frontage Road and Stock Drives on the Southwesterly side" of the freeway. This covenant in the deed manifested a clear merger of the terms of the 1967 Contract into the deed. As previously noted, the various succeeding deeds conveying the Day property all contained language transferring "hereditaments" or "appurtenances" The reservation of the right of access was such an appurtenance.

As was the case with Donna Day Jacobs and David R. Day's inverse condemnation claim, the Department's letter may constitute a waiver of that defense. This will be a question of fact for the jury to decide. *See e.g., April Beguesse, Inc. v, Rammell*, 156 Idaho 500, 514, 328 P.3d 480, 494 (2014). Thus, the district court erred by dismissing the Day family's claims based upon breach of contract and breach of the implied covenant of good fair dealing.

## C. Neither party is entitled to an award of attorney fees.

On appeal, both parties argue that they are entitled to attorney fees pursuant to Idaho Code section 12-120(3). However, the Department is not the prevailing party on appeal and is therefore not entitled to an award of attorney fees. Although the Day family has prevailed on appeal and are entitled to an award of costs, they are not entitled to an award of attorney fees because "it cannot yet be determined who will be the prevailing party in the action." *Savage v. Scandit Inc.*, 163 Idaho 637, 643, 417 P.3d 234, 240 (2018). Attorney fees for this appeal can be awarded by the district court at the conclusion of this case if the Day family prevails. *Portfolio Recovery Assocs., LLC v. MacDonald*, 162 Idaho 228, 236 395 P.3d 1261, 1269 (2017).

## III.    CONCLUSION

We vacate the district court's judgment on the inverse condemnation claim with respect to Donna Day Jacobs and David R. Day and vacate the district court's judgment in favor of the Department on the Day family's contractual claims. Costs, but not attorney fees, to the Day family.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**